HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. C. L. ANDERSON.

Decided December 4, 1906.

**1.—Derailment—No Negligence.**

In a case of the derailment of a railroad train at a switch, evidence considered, and held not to raise an issue of negligence on the part of the railroad company.

**2.—Same—Damage by Petroleum—Negligence.**

Where the wreck of a freight train was not caused by the negligence of defendant company it was not required to delay the repair of its track and the protection of its own property to prevent the flow of oil from cars in the train upon the land of an adjacent owner; but where there was evidence that, after the wreck was repaired, the oil continued to flow several days from the overturned cars onto plaintiff's land, the issue of negligence in this respect was properly submitted to the jury.

**3.—Incompetent Testimony—Harmless.**

When incompetent testimony has been admitted, and the jury are afterwards instructed not to consider it, its admissions will be regarded as harmless.

**4.—Allegata and Probata.**

In a suit for damage to a water tank, and not to the land on which it is situated, evidence of the value of the land before and after the injury is inadmissible.

Appeal from the County Court of Waller County. Tried below before Hon. J. D. Harvey.

*Andrews, Ball & Streetman,* for appellant.—The court erred in refusing to give in charge to the jury the special instruction, requested by the defendant, which is as follows: "In this case you are instructed that the evidence is not sufficient to sustain a finding that the defendant was negligent, and that the damage sustained by plaintiff was the proximate

result of such negligence, and you are therefore instructed to return a verdict for the defendant." Missouri Pacific Ry. Co. v. Platzer, 73 Texas, 123; Gulf, C. & S. F. Ry. Co. v. Blohn, 73 Texas, 637; Galveston, H. & S. A. Ry. Co. v. Lewis, 25 S. W. Rep., 294; Galveston, H. & S. A. Ry. Co. v. Sullivan, 42 S. W. Rep., 568.

There being no allegation to support the introduction of evidence showing the cost of the dam, it should have been excluded. Moore v. Kennedy, 81 Texas, 147.

*J. V. Meek*, for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellee against appellant to recover damages alleged to have been caused by an overflow of oil from appellant's right of way on to appellee's premises.

Plaintiff alleged that by reason of the defendant's negligence in the maintenance of its track, and by reason of its negligence in the operation and handling of its trains, a train carrying a number of cars of fuel oil left the track and was overturned, the oil therefrom running down into plaintiff's tank in large quantities, killing the fish and making it necessary to cut the dam holding the water in said tank that the oil might escape. In addition to the destruction and damage to his tank and fish plaintiff claimed damage for the loss of a place from which he might water his cattle; the loss of two milch cows and injury to a third from drinking the oil; loss arising from the expense of keeping up his cattle and feeding them for a period of fifteen days, there being no other water in his pasture than the tank now alleged to be covered with oil; the cost of repairing the dam and the further destruction of two acres of pasture land, over which the oil ran, placing the aggregate amount of his damages in the sum of $1,000. Plaintiff also alleged negligence on part of the defendant in failing to prevent said oil from running into his tank after the wreck had occurred.

The defendant answered by general denial and plea of contributory negligence in that plaintiff failed to use ordinary care to prevent or lessen the damage, if any, which was sustained by him by the flow of oil over his premises.

A trial by jury in the court below resulted in verdict and judgment in favor of plaintiff for the sum of $300.

The evidence shows that a train on appellant's road in which there were several cars of crude petroleum oil was wrecked at the connection of defendant's main line with a switch track at the town of Waller on February 11, 1905, and the oil escaping from said cars ran down appellant's right of way into a small creek or gully and down said creek into a tank on appellee's premises. The oil so carried into the tank killed the fish therein and also killed two of appellee's cows that drank the water from the tank after it became contaminated by the oil. Appellee because of this contamination had to cut his dam and let all of the water out of the tank, and was deprived of the use of the tank for watering his stock for some time and was also put to the expense of rebuilding his dam.

The evidence as to the cause of the wreck was undisputed and is in substance as follows: The train which was wrecked was going north and

the accident occurred about 8 o'clock p. m. at the intersection of a switch track at Waller with the main line of appellant's road. About one-half of an hour before the wreck occurred another train had passed this place going south and had run over and killed a cow. The foot of this cow was cut off by the train that struck her and pressed down in the frog of the switch so tightly as to cause the switch to open sufficiently to derail the train coming north shortly thereafter. The night was dark and foggy and the operatives of the train that struck the cow did not see the animal until it ran on the track immediately in front of the engine. The cow was struck in the limits of the yards at Waller, a place where the right of way could not be fenced. The cow ran out from behind a small tool house near the track and the operatives of the train could not have seen her in time to have prevented the train from striking her. The train was being operated in a careful manner and was not running at a high rate of speed. No jar was caused the train by striking the cow and there was nothing to indicate to the operatives that any injury had been done the track. When the train coming north reached Waller the switch signal showed a clear track and the engineer and fireman both testified that they were looking down the track and could see nothing wrong with the switch and that the cow's foot in the frog and the consequent small opening in the switch could not have been seen by them.

We do not think this evidence raises the issue of negligence on the part of the appellant or its employes as a proximate cause of the wreck of the train, and that issue ought not to have been submitted to the jury. The derailment and wreck of the train was clearly an accident which could not have been avoided by the exercise of ordinary care and was not due, as alleged, either to the failure of the operatives of the train to exercise ordinary care in its operation, or the failure of the appellant to exercise such care in the proper maintenance of its track.

In regard to the third ground of negligence charged in the petition, viz: That appellant's employes failed to use ordinary care to stop the flow of oil over appellee's premises after the cars were wrecked and after they had been notified by appellee that the oil would run into and ruin his tank, the evidence shows that appellee, who lived near the place of the wreck, was sick in bed at the time, but that he learned of the wreck shortly after it occurred and sent a note to appellant's section master telling him that the oil would find its way into his tank and requesting him to have the gully dammed so as to confine the oil and prevent its flowing into the tank. The evidence further shows that it was raining at the time the wreck occurred and water was running down the gully in considerable volume. The force of workmen which appellant was able to obtain that night was insufficient to enable it to clear the wreck and put the track in condition for the passage of trains and also to build a dam across the gully, and the wreck not having been caused by the negligence of appellant, ordinary care on its part did not require it to delay the repair of its track and the protection of its own property rights in order to prevent or lessen the damage to appellee's property.

There is evidence, however, to the effect that oil continued to run from the overturned cars for several days after the wreck and after appellant had repaired its track; that appellant did nothing to stop such flow and that this continuous flow of oil was the main cause of the damage to

appellee's property.  This evidence presented an issue of negligence which it was proper to submit to the jury.  (Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 121.)

The testimony of the appellee Anderson as to the original cost of the dam was inadmissible, but the trial court instructed the jury not to consider it for any purpose, and we must, in view of this instruction, regard the admission of the evidence as harmless error.

The petition does not seek to recover damages to the land by reason of the destruction of the tank, and therefore evidence of the value of the land before and after the destruction of the tank was immaterial and inadmissible.

There was no evidence showing any damage to appellee from the loss of his tank as a fish pond during the year of 1905 and that issue should not have been submitted to jury.

We have not discussed the various assignments of error in detail, but in what we have above said have disposed of all assignments which we think present any error.

For the reasons indicated the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*