## ANNIE LEE TURNER ET AL. V. BIG LAKE OIL COMPANY ET AL.

No. 6626. Decided July 15, 1936.
Rehearing overruled October 21, 1936.
(96 S. W., 2d Series, 221.)

*Kerr & Gayer*, of San Angelo, for plaintiffs in error.

It is immaterial whether the waters causing the damages to plaintiffs' land were surface waters or the waters of a water course, the damage was done by the defendants permitting the salt water to escape from their tanks and reservoirs and flow over plaintiffs' land, and in so doing created a nuisance. Wilson v. Haggin (Com. App.), 50 S. W. (2d) 797; International & G. N. Ry. Co. v. Reagan, 121 Texas, 233, 49 S. W. (2d) 414; City of Wichita Falls v. Mauldin (Com. App.), 39 S. W. (2d) 859.

*Robert T. Neill*, of San Angelo, *G. R. Pate, John A. Braly,* and *Burney Braly,* of Fort Worth, for defendants in error.

If the suit had been one for damages for diverting or impounding surface waters, under their pleadings the plaintiffs nevertheless would have had the burden of showing, and procuring a finding of, negligence. Miller v. Letzerich, 121 Texas, 248, 49 S. W. (2d) 404; Motl v. Boyd, 116 Texas, 82, 286 S. W., 458; Alexander v. Good Marble & Tile Co., 4 S. W. (2d) 636.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

The primary question for determination here is whether or not the defendants in error, without negligence on their part, may be held liable in damages for the destruction or in-

jury to property occasioned by the escape of salt water from ponds constructed and used by them in the operation of their oil wells. The facts are stated in the opinion of the Court of Civil Appeals (62 S. W. (2d) 491), and will be but briefly noted in this opinion.

The defendants in error in the operation of certain oil wells in Reagan County constructed large artificial earthern ponds or pools into which they ran the polluted waters from the wells. On the occasion complained of, water escaped from one or more of these ponds, and, passing over the grass lands of the plaintiffs in error, injured the turf, and after entering Garrison draw flowed down the same into Centralia draw. In Garrison draw there were natural water holes, which supplied water for the livestock of plaintiffs in error. The pond, or ponds, of water from which the salt water escaped were, we judge from the map, some six miles from the stock-water holes to which we refer. The plaintiffs in error brought suit, basing their action on alleged neglect on the part of the defendants in error in permitting the levees and dams, etc., of their artificial ponds to break and overflow the land of plaintiffs in error, and thereby pollute the waters to which we have above referred and injure the turf in the pasture of plaintiffs in error. The question was submitted to a jury on special issues, and the jury answered that the defendants in error did permit salt water to overflow from their salt ponds and lakes down Garrison draw and on to the land of the plaintiffs in error. *However, the jury acquitted the defendants in error of negligence in the premises.* The questions and answers are shown in the opinion of the Court of Civil Appeals, and will not be here repeated.

Various questions are raised in this Court, but we are well satisfied with the opinion of the Court of Civil Appeals, and will take occasion to discuss only two issues.

■ The plaintiffs in error in their application say that the Court of Civil Appeals in its opinion has held that in order for plaintiffs in error to recover because the defendants in error permitted salt water to overflow their land, kill the vegetation, and pollute the water of their live stock, *"they must allege and prove some specific act of neglect or must allege and prove that the water polluted was a water course."* In this conclusion we think the Court of Civil Appeals stated the correct rule. Gulf C. & S. F. Ry. Co. v. Oakes, 94 Texas, 155; 58 S. W., 999, 52 L. R. A., 293, 86 Am. St. Rep., 835; Galveston, H. & S. A. R. Co.

v. Currie, 100 Texas, 136, 96 S. W., 1073, 10 L. R. A. (N. S.) 367; Cosden Oil Co. v. Sides, 35 S. W. (2d) 815; Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 117, 11 S. W., 160, 3 L. R. A., 639; 15 Am. St. Rep., 771; Houston & T. C. Ry. Co. v. Anderson, 44 Texas Civ. App., 394, 98 S. W., 440; Rigdon v. Temple Waterworks Co., 11 Texas Civ. App., 542, 32 S. W., 828; 67 Corpus Juris, p. 915, sec. 356, p. 930, sec. 385; Farnham on Waters, Vol. 3, p. 2546, sec. 875; Thompson on Negligence, Vol. 1, secs. 696, 706, 707.

The Court of Civil Appeals quite correctly determined that the rules of law applicable to the pollution of streams and water courses or public waters were not applicable here, for reasons which that court stated. So the immediate question presented is whether or not defendants in error are to be held liable as insurers, or whether the cause of action against them must be predicated upon negligence. We believe the question is one of first impression in this Court, and so we shall endeavor to discuss it in a manner in keeping with its importance.

Upon both reason and authority we believe that the conclusion of the Court of Civil Appeals that negligence is a prerequisite to recovery in a case of this character is a correct one. There is some difference of opinion on the subject in American jurisprudence brought about by differing views as to the correctness or applicability of the decision of the English courts in Rylands v. Fletcher, L. R. 3 H. L. 330. The doctrine of this case is correctly stated in the notes to 15 L. R. A. (N. S.), p. 541, as follows:

"In Rylands v. Fletcher, L. R. 3 H. L. 330, Affirming L. R. 1 Exch. 265, which is the leading case, the plaintiff was the lessee of mining privileges which had passages communicating with abandoned mines under the land of a mill owner who built a reservoir over some shafts which had been filled in, and the pressure of the water forced the same through these shafts and injured plaintiff's mines. The defendant did not know that the mines were being worked underneath the land. *It was said that the failure on the part of the engineer or contractor to block up these abandoned shafts was an act of negligence for which the defendant would be liable.* But it was held that the defendant was liable on the ground that he had brought on his premises, and stored, a dangerous substance without restraining it. Cranworth, J., said: 'The defendants, in order to effect an object of their own, brought onto their land, or onto land which for this purpose may be treated as being theirs, a large accumulated mass of water, and stored it up in a reser-

voir. The consequence of this was damage to the plaintiff, and for that damage, however, skilfully and carefully the accumulation was made, the defendants, according to the principles and authorities to which I have adverted, were certainly responsible.'" (Italics ours.)

The italicized portion of the above quotation *shows that in fact the case was one of negligence,* and that the damages could have been placed upon that ground. The distinguished judge who wrote the opinion in truth went beyond and outside the facts of his case in holding that there could be liability without negligence. This dictum, however, with some modification, became the rule of decision in England and in some of the American courts. (See Thompson on Negligence, Vol. 1, secs. 697 to 703, inclusive.) In a qualified sense, therefore, Rylands v. Fletcher may be regarded as a statement of the common law rule; not, however, of such universal acceptation as to be controlling on the American courts.

While the rule has been followed to some extent in this country, in general the American courts base liability, where dams have broken, on negligence, either in the original construction of the reservoir or in failing properly to provide against all such contingent damages as might reasonably be anticipated. 67 Corpus Juris, p. 916, sec. 356; Thompson on Negligence, Vol. 1, secs. 696, 706, 707; 15 L. R. A. (N. S.) Notes, pp. 541 to 546; Sedgwick on Damages (8th ed.), Vol. 1, p. 34, sec. 33.

This Court long since repudiated the general rule announced in Rylands v. Fletcher. Associate Justice Williams, in the case of Gulf C. & S. F. R. Co. v. Oakes, cited above, a case involving the planting and subsequent spreading of Bermuda grass, after stating the rule in Rylands v. Fletcher, declined to follow the same, and in part said:

"There have been subsequent decisions in England which some authorities regard as relaxing the rule in Fletcher v. Rylands, but it is unnecessary to refer especially to them. Cooley on Torts, 677-680. The rule laid down was largely deduced from prior rulings establishing absolute liability for damages caused by fires kindled on one's premises and spreading to those of another; by injuries inflicted by one, in his lawful self-defense against another, upon an innocent bystander; and by animals straying from the lands of their owners upon those of others. The law has become settled, in this country at least, that there is no liability in the two first instances without negligence on the part of the person permitting the fire to

spread or inflicting the injury; and in the case of animals, the law is entirely different in this and other States. Clarendon, etc., Co. v. McClelland Bros., 86 Texas, 179, same case, 89 Texas, 483.

"By making the liability absolute, the rule in Fletcher v. Rylands, taken literally, imposes an unqualified restriction upon the right of an owner of land to put it to a use lawful in itself, and this is the aspect in which it has the most direct bearing upon the question before us. It so applies the maxim, 'sic utere tuo,' etc., as to make the owner of the land liable, in all cases, for loss or damage suffered by another in consequence of the escape of anything brought by the owner upon his land, which, in escaping, is likely to do mischief. Of course, the broad proposition was laid down with reference to such things as the court had in mind and should not, even if accepted as generally correct, be applied indiscriminately to other facts which, in their nature, are essentially different. Even if the rule stated were a just one defining the duty of one storing so dangerous and destructive an element as water is when moving in large volume, it should be applied with careful discrimination to things which, like grass, spread slowly and are subject to more or less control. The fact that the proposition as abstractly stated can not be justly applied to all subjects which its terms embrace is enough to show that it is incorrect as a statement of a general principle of law. Accordingly, it has not met with general acceptance in this country, most of the authorities holding that liability for such injuries must be based upon negligence or other culpability on the part of the person sought to be held responsible. The authorities are so numerous as to make a review or even the citation of them all impracticable. Cooley on Torts. 776, 777; Bishop on Non-Con. Law, 839, note 3; 1 Thomp. on Neg., 96; Coal Co. v. Sanderson, 113 Pa. St., 126; Loser v. Buchanan, 51 N. Y., 476; Brown v. Collins, 53 N. H., 442; Marshall v. Welwood, 38 N. J. L., 339."

As noted by Associate Justice Funderburk in Cosden Oil Co. v. Sides, 35 S. W. (2d) 816, 818, this Court in Galveston, H. & S. A. R. Co. v. Currie, supra, in an opinion also by Associate Justice Williams, interpreted and applied its holding in the Oakes Case, saying in part:

"In the absence of some positive law forbidding or regulating the keeping or use of the thing, the fundamental question is one of negligence vel non, depending, as in other cases of negligence, upon the inquiry whether or not there has been

a neglect or violation of the duty which the law imposes upon all persons to use due care in the use of their property or the conduct of their business to avoid injury to others. Some of the older cases in England seem to assert the absolute liability of an insurer, but it is settled in this state that the question is one of negligence (Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 155); * * *"

In the Cosden Oil Co. Case, cited above, the Court of Civil Appeals had before it a case involving damage to land brought about by the flow of "oils, waste oil and products." The court in an able opinion by Associate Justice Funderburk held, correctly we think, that no right of recovery was shown independently of the existence of negligence.

In the case of Rigdon v. Temple Waterworks, 11 Texas Civ. App., 542, 32 S. W., 829, involving damages due to the falling of a water tower and tank, the Court of Civil Appeals applied the rule of negligence as a predicate for damages, although the exact question here involved may have not been presented in that case.

In Houston & T. C. R. Co. v. Anderson, 44 Texas Civ. App., 394, 98 S. W., 440, the Court of Civil Appeals, in an opinion by Associate Justice Pleasants, held that in the absence of negligence, damages due to the flow of crude oil from a wrecked freight train could not be recovered.

As pointed out in the quotation above from Judge Williams' opinion in the Oakes Case, our courts hold that one who uses fire, an agency as dangerous as water, is not an insurer of his neighbors' safety, but is only liable for damages due to negligence. 19 Texas Jur., p. 660, sec. 2, and cases cited in the notes; Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 117, 11 S. W., 160, 3 L. R. A., 639; Missouri, K. & T. Ry. Co. v. Carter, 95 Texas, 483, 68 S. W., 159; Pfeiffer v. Aue, 53 Texas Civ. App., 98, 115 S. W., 300 (writ refused).

As to liability for trespass by animals, we have likewise departed from the common law rule, because unsuited to our conditions. 2 Texas Jur., p. 751, sec. 15, p. 755, sec. 19; Clarendon Land etc. Co. v. McClelland Bros., 89 Texas, 483, 34 S. W., 98; Pace v. Potter, 85 Texas, 473, 22 S. W., 300.

We have also discarded the common law of liability for injuries to an innocent bystander by one in his lawful self-defense against another, and hold that civil liability in such instances can be predicated only upon negligence. Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 155, 158, 58 S. W., 999; Koons v. Rook, 295 S. W., 592.

The storage and use of explosives is clearly within the rule of absolute liability laid down in Rylands v. Fletcher; but, as to these, we have also changed from the common law rule, and predicate liability upon negligence, in the absence of controlling statutes or facts so obvious as to constitute a nuisance as a matter of law. 19 Texas Jur., p. 458, sec. 4, p. 459, sec. 5, p. 461, sec. 7, p. 462, sec. 8, p. 464, sec. 9.

Associate Justice Williams in the opinion in the Oakes Case, supra, states that the rule of absolute liability announced in Rylands v. Fletcher was largely deduced from prior rulings establishing absolute liability for damages caused by; (1) fires kindled on one's premises and spreading to those of another; (2) by injuries inflicted by one in his lawful defense against another upon an innocent bystander; and (3) by animals straying from the lands of their owners upon those of others.

As shown above, in these three instances, as well as others where in England the same rule was applied, we have departed from the common law, and only award damages when predicated upon *negligence*.

Since we have repudiated the bases of the rule announced in Rylands v. Fletcher, it follows as a necessary corollary that we should not apply the rule in cases such as the one before us. It is true that the Oakes Case, in which Justice Williams announced in general terms our repudiation of the absolute liability doctrine, was not a water case; but the reasons for its repudiation there are equally cogent here. No good reason can be assigned for declining to follow the common law rule as applied to damages due to fires, to the destruction of property by animals, and to injuries to an innocent bystander by one engaged in his own defense, the basis of the rule applied to the water case of Rylands v. Fletcher, and then apply the repudiated rule in the type of case before us. In general, we believe, it may be said that the doctrine of absolute liability announced in Rylands v. Fletcher has been likewise generally repudiated in the United States, although some States in at least a modified form adhere to it. Authorities supra.

Thompson in his masterly work on Negligence, Vol. 1, sec. 694 et seq., reviews at length the English common law rule of absolute liability in the use and control of agencies, which from their nature have a tendency to escape control and get upon land of adjoining owners, and there produce injury, which he says make those who employ such agencies "liable as *an insurer*." He then states that the American rule is to the con-

trary; that here *liability* can only arise from *negligence*. He says:

"Sec. 706. *But the American Doctrine Decisively Against that Case (Rylands v. Fletcher) in Respect of Liability for Escape of water.*—Where water is collected in reservoirs, behind dams, in canals or in ditches, in the ordinary manner for the purpose of being used as a motive power, in navigation, in irrigation, in mining, or for any other convenient and lawful end, the rule, in reason and according to the decisive weight of American judicial opinion, is different. There is nothing unlawful in collecting water for such purposes; and hence, in case it escapes and does mischief, the person so collecting it can only be held liable on the ground of something unlawful *in the manner* in which he has built or maintained his structure,—that is, on the principle of negligence. * * * It follows, therefore, that if a dam breaks away, to the injury of property below, the owner will not be liable unless the person injured can show negligence; and if it appear in proof that the dam was well and properly built, upon a proper model, he will not be liable merely from the fact that it gave way; but otherwise, if it broke away in consequence of having been improperly constructed, or maintained in unsafe condition."

"Sec. 707. *Rule of Diligence in Restraining Water is Ordinary Care.*—The rule of diligence which the law puts upon an owned or occupier of land in restraining water artificially collected thereon is the rule described as *ordinary or reasonable care;* and here, as in other cases, this rule of care various in proportion to the danger likely to accrue to others from the escape of water. It may be discharged by slight attention in some cases, and it may require the most exacting and unremitting attention, care and skill in others. The rule of diligence here exacted is, as in other cases, ordinary care which men employ where the risk is their own; * * *"

Judge Thompson then says, and with this we concur:

"For this rule of ordinary care exacts here, as in other cases, a degree of vigilance, attention, and skill in proportion to the probabilities of danger. In an action for damages caused by the breaking away of a dam, it will not do for the owner to say that he built it strong enough to resist ordinary freshets; he must build it strong enough to resist those extraordinary freshets which sometimes occur, and which are therefore reasonably to be anticipated."

A review of the decisions made the basis of Judge Thompson's text, as well as those subsequent, leads to the conclusion

stated by him, that the American rule in cases of the character before us requires negligence as the basis of the recovery of damages; that the doctrine of Rylands v. Fletcher is not the common law rule as applied generally in this country to cases of the character before us. This conclusion is not only supported by Thompson and the various cases cited in Sedgwick and the notes to 15 L. R. A. (N. S.), supra, but the editor of the notes in the latter declares:

"The weight of authority in this country is that the defendant maintaining a water ditch or tank, or operating and using water pipes, will not be liable for damages caused to others from the escape of the water from his premises in the absence of negligence."

Likewise Corpus Juris (Vol. 67, p. 915, sec. 356) states:

"The English rule has been followed to some extent in this country; but in general the American courts base the liability on negligence, either in the original construction of the reservoir or other receptacle, in subsequently allowing it to become defective, or in failing properly to provide against all such contingent damages as might reasonably be anticipated."

The American conception of the common law is the rule of decision with us, rather than the rule as understood and applied in England. 9 Texas Jur., p. 307, sec. 9; Dickson v. Strickland, 114 Texas, 176, 265 S. W., 1012. Applying the common law rule as deducible generally from the decisions of the American courts, we are compelled to say that *negligence* is a necessary basis for actions of the character before us.

Another rule with reference to the adoption of the English common law is that in adopting it as the rule of decision we have done so only in so far as consistent with the conditions which obtain in this State. 9 Texas Jur., p. 310, sec. 12; Motl v. Boyd, 116 Texas, 82, 115, 286 S. W., 458.

In Rylands v. Fletcher the Court predicated the absolute liability of the defendants on the proposition that the use of land for the artificial storage of water was not a natural use, and that, therefore, the land owner was bound at his peril to keep the waters on his own land. Rylands v. Fletcher, L. R. 3, H. L., 330; City Water Power Co. v. Fergus Falls, Anno. Cas. 1912A, p. 110 (note); 27 R. C. L., p. 1206, sec. 124. This basis of the English rule is to be found in the meteorological conditions which obtain there. England is a pluvial country, where constant streams and abundant rains make the storage of water unnecessary for ordinary or general purposes. When the Court said in Rylands v. Fletcher that the use of land for

storage of water was an unnatural use, it meant such use was not a general or an ordinary one; not one within the contemplation of the parties to the original grant of the land involved, nor of the grantor and grantees of adjacent lands, but was a special or extraordinary use, and for that reason applied the rule of absolute liability. This conclusion is supported by the fact that those jurisdictions which adhere to the rule in Rylands v. Fletcher do not apply that rule to dams or reservoirs constructed in rivers and streams, which they say is a natural use, but apply the principle of negligence. 27 R. C. L., p. 1207, sec. 125. In other words, the impounding of water in streamways, being an obvious and natural use, was necessarily within the contemplation of the parties to the original and adjacent grants, and damages must be predicated upon negligent use of a granted right and power; while things not within the contemplation of the parties to the original grants, such as unnatural uses of the land, the land owner may do only at his peril. As to what use of land is or may be a natural use, one within the contemplation of the parties to the original grant of land, necessarily depends upon the attendant circumstances and conditions which obtain in the territory of the original grants, or the initial terms of those grants.

In Texas we have conditions very different from those which obtain in England. A large portion of Texas is an arid or semi-arid region. West of the 98th meridian of longitude, where the rainfall is approximately 30 inches, the rainfall decreases until finally, in the extreme western part of the State, it is only about 10 inches. This land of decreasing rainfall is the great ranch or live stock region of the State, water for which is stored in thousands of ponds, tanks, and lakes on the surface of the ground. The country is almost without streams; and without the storage of water from rainfall in basins constructed for the purpose, or to hold waters pumped from the earth, the great live stock industry of West Texas must perish. No such condition obtains in England. With us the storage of water is a natural or necessary and common use of the land, necessarily within the contemplation of the State and its grantees when grants were made, and obviously the rule announced in Rylands v. Fletcher, predicated upon different conditions, can have no application here.

Again, in England there are no oil wells, no necessity for using surface storage facilities for impounding and evaporating salt waters therefrom. In Texas the situation is different. Texas has many great oil fields, tens of thousands of wells in

almost every part of the State. Producing oil is one of our major industries. One of the by-products of oil production is salt water, which must be disposed of without injury to property or the pollution of streams. The construction of basins or pounds to hold this salt water is a necessary part of the oil business. In Texas much of our land was granted without mineral reservation to the State, and where minerals were reserved, provision has usually been made for leasing and operating. It follows, therefore, that as to these grants and leases the right to mine in the usual and appropriate way, as, for example, by the construction and maintenance of salt water pools such as here involved, incident to the production of oil, were contemplated by the State and all its grantees and mineral lessees, that being a use of the surface incident and necessary to the right to produce oil. 40 Corpus Juris, p. 752, sec. 74.

From the foregoing it is apparent that we decline to follow and apply in this case the rule of absolute liability laid down in Rylands v. Fletcher, because: (a) The rule has been generally repudiated by this Court in Gulf, C. & S. F. R. Co. v. Oakes, 94 Texas, 155, 58 S. W., 999; and Galveston, H. & S. A. R. Co. v. Currie, 100 Texas, 136; 96 S. W., 1073; (b) the basis of the rule drawn from its application in England in cases of fire, damage by live stock, and injuries to an innocent bystander have been repudiated by us; (c) the conditions which obtain here are so different from those of England that the rule should not be applied here; (d) and because the rule of negligence, instead of absolute liability, while not obtaining universally in the United States, is of such general application as to constitute, as Thompson says, the "American Rule," in effect the common law rule as applied in America, which is the common law which we follow rather than that declared by the English courts.

Against the adoption of the negligence rule in cases of this character, we are cited to a number of cases which it is claimed conflict therewith. We do not find it necessary to discuss all of them by name.

The pipe line cases can have no application here, for the reason that these cases generally have some form of contract as a basis, or else the facts show injury due to an obvious nuisance. Nor are we prepared to say that the conveyance of oil by pipe lines is an unnatural use of land, and that the rule of absolute liability should be applied to them. Pipe lines are but a means of transportation, and certainly it was within the contemplation of the State and the original grantees of all

lands that the latter could be used to carry transportation agencies. Besides, it appears that the opinion of Associate Justice Sharp in Lone Star Gas Co. v. Hutton, 58 S. W. (2d) 20, strongly indicates that in that type of case the rule of negligence should be applied. Nor is it necessary for us to discuss cases of the pollution of public waters or riparian streams, as these are predicated upon statutes or riparian rights protected by law from invasion.

Other cases to which our attention has been directed are nuisance cases, where the undisputed facts showed an actionable nuisance. Nor need we discuss cases where injury was the necessary result of the operation of some business, regardless of care or a failure to use care. We do think, however, that the cases of Texas & P. R. Co. v. O'Mahoney, 50 S. W., 1049, 60 S. W., 902, and Texas & P. R. Co. v. Frazer, 182 S. W., 1161, deserve discussion because writs of error were refused by this Court.

In the last appeal of the O'Mahoney Case, 24 Texas Civ. App., 631, 60 S. W., 902, the Court of Civil Appeals held that where the railroad company constructed an artificial lake or pond on its own land, by means of a dam, and diverted a natural stream thereto through a ditch, and maintained the water therein so high that by reason of its pressure the water percolated through the dam and destroyed plaintiff's land, and caused sickness, etc., the railroad company was liable for damages, regardless of the question of negligence in the construction of the dam. In making this holding the court used some language and cited some authorities which can be urged as an approval of the rule of absolute liability, announced in Rylands v. Fletcher, although the Rylands Case was not cited. We shall not quote the court's statement of the facts, since the opinion is available.

It is obvious from the statement made by the Court that the railroad company had not only created a nuisance as a matter of undisputed fact, but had, in violation of the Constitution, substantially taken a portion of O'Mahoney's property; and, of course, in such a case proof of negligence was not necessary. 31 Texas Jur., p. 421, sec. 11.

In its essential aspects the case of Texas & P. Ry. Co. v. Frazer, supra, was one of the diversion of surface waters from their place of natural flow in such manner as to injure the owner of the lower estate. In addition to the water diverted by the barrow pits of the railroad company, it had constructed a levee and ditch 1400 yards long, apparently around at least

a part of the town of Toyah, which carried the water from its natural drainage way on the north side of the railway track to the company's reservoir on the south side of the track. The case was not one where the company had merely erected a dam in a natural basin to impound waters which would naturally flow into it. This tortious act of the railway company in diverting surface water from its natural course, and concentrating it above the plaintiff's land in this case, was the real basis of the action, and as to which there was no dispute. Had no reservoir been constructed and the diverted waters been thrown upon the plaintiff's land to his damage, he would have had a cause of action without the necessity of alleging negligence. The diversion of the water and throwing it on the plaintiff's land to his damage would have been an invasion of his rights, just as though his property had been bodily taken. Bunch v. Thomas, 121 Texas, 225, 229, 49 S. W. (2d) 421; 27 **Ruling** Case Law, p. 1151, sec. 79.

Nor do we believe that the facts that the diverted water was collected in a reservoir before being cast on the plaintiff's land changes the rule. It was merely one of the instrumentalities of the wrongful diversion by which the diverted agency was concentrated and rendered more destructive. 67 Corpus Juris, p. 877, sec. 300.

That the Court of Civil Appeals considered the case as essentially one of the diversion of surface waters is shown by the fact that it sustained the action of the trial court in refusing a charge upon the defense of *unprecedented rainfall*, upon the ground that such a plea was no defense when surface waters had been diverted to the plaintiff's injury, citing the case of Galveston, H. & S. A. R. Co. v. Riggs, 107 S. W., 589.

If the case had been one simply of impounding water, and the court thought that the principles of Rylands v. Fletcher should rule it, then an act of God, such as an unprecedented rainfall, would have been a defense. Thompson on Negligence, Vol. 1, sec. 700. But where the act of God combined with the negligence or actionable conduct of the defendant as a proximate cause to bring about the injury and damage, *vis major* is not a defense, and of course the holding of the Court of Civil Appeals was correct. 1 Texas Jur., p. 700, sec. 5; 67 Corpus Juris, p. 931, sec. 385; Patterson v. Speer, 229 S. W., 275, 276 (Mo.).

We have heretofore stated that this Court refused to grant writs of error in both the O'Mahoney and Frazer Cases. At the time the Supreme Court refused these writs of error, it

was compelled by its jurisdictional statutes to either grant or refuse the applications. Since the judgments were correct, it is obvious that it was the Court's duty to refuse the writs. Such refusals are not to be construed as an approval of all the reasons assigned by the Courts of Civil Appeals for their legal conclusions. The refusals, however, were obviously correct on the grounds we have stated above.

■ The plaintiffs in error insist that the waters of Garrison Draw, if not the waters of a stream, the pollution of which is prohibited by law, are nevertheless public waters under R. S., Art. 7467, to which the anti-pollution statutes apply. The statute in so far as here involved reads:

"Art. 7467. Property of the State.—The waters of the ordinary flow and underflow and tides of every flowing river or natural stream, of all lakes, bays or arms of the Gulf of Mexico, and the *storm, flood or rain waters of every river or natural stream, canyon, ravine, depression or watershed, within the State of Texas, are hereby declared to be the property of the State,* and the right to the use thereof may be acquired by appropriation in the manner and for the uses and purposes hereinafter provided, and may be taken or diverted from its natural channel for any of the purposes expressed in this chapter." (Italics ours.)

The contention here is that this Article, particularly the italicized words, makes the water from rainfall while on the watershed, or in ravines and draws, and while it is still regarded in law and fact as surface water, and before it has reached a riparian or public stream, *public waters,* the pollution of which is prohibited by positive enactment.

The statute is capable of this construction if it alone were to be looked to for its meaning. It must be interpreted, however, in the light of the Constitution and of the common law and Mexican civil law under which lands have been granted in this State. Miller v. Letzerich, 121 Texas, 248.

■ Under both the common law and the Mexican civil law the owners of the soil on which rains may fall and surface waters gather are the proprietors of the water so long as it remains on their land, and prior to its passage into a natural watercourse to which riparian rights may attach. Farnham on Water Rights, Vol. 3, sec. 883, and cases cited in the note; Miller v. Letzerich, 121 Texas, 248, 254, 256, 49 S. W. (2d) 404; Hall's Mexican Law (1885), p. 402, sec. 1372.

No citation of authority is necessary to demonstrate that

the right of a land owner to the rain water which falls on his land is a property right which vested in him when the grant was made. Being a property right, the Legislature is without power to take it from him or to declare it public property and subject by appropriation or otherwise to the use of another. This is so regardless of the question as to whether the grant was made by Texas or Mexico. Miller v. Letzerich, 121 Texas, 248, 49 S. W. (2d) 404.

If Article 7467, quoted above, is to be construed so as to make surface water public waters and subject to appropriation, then it would be clearly void, because in violation of the State Constitution. Article 7469 declares that the provisions of Article 7467 and related provisions shall not prejudice vested rights. Interpreting Article 7467 we would, in order to sustain its validity, be compelled to say that it has no application to lands granted prior to the enactment of the statute, in so far as it attempts to take from the grantees their rights to surface waters and to make them public waters subject to appropriation. Whether or not the Article in this respect could be applied under our Constitution to grants made subsequent to the passage of the law is not before us in this case, and no opinion is expressed relative thereto. There is no contention here that the surface waters alleged to have been polluted were on lands granted by the State subsequent to the enactment of Article 7467.

Article 7467 has no application to the facts of this case, and the surface waters involved were not public waters, the pollution of which was prohibited by express statutory enactment.

Revised Statutes, article 7589a, relating to the diversion or impounding of surface waters, has no application to this case. We do not understand from the pleadings that the suit was brought for the wrongful diversion or impounding of surface waters to another's injury.

The judgments of the Court of Civil Appeals and of the District Court are affirmed.

Opinion delivered July 15, 1936.

Rehearing overruled October 21, 1936.