## WARREN v. PREMIER OIL REFINING CO. OF TEXAS.

### No. 2383.

Court of Civil Appeals of Texas. Eastland.

June 25, 1943.

Rehearing Denied July 16, 1943.

288

Grisham & Grisham, of Eastland, for appellant.

Turner & Seaberry, of Eastland, for appellee.

LESLIE, Chief Justice.

Plaintiff, Ernest Warren, instituted this suit against the Premier Oil Refining Company, a pipe line company, for damages to his cattle and leased grass by reason of two leaks which occurred in the defendant's lines in January, 1942. Plaintiff alleged that the oil leaked out and killed his grass and injured some and killed others of his cattle that drank the oil. Plaintiff grounded his cause of action on the alleged negligence of the defendant. Specific acts of negligence were alleged. Only two grounds of such negligence were submitted to the jury.

In substance the two grounds of negligence submitted were: (1) Did the defendant fail to inspect its lines, and (2) was defendant using excessive pressure at the time of the leaks. The jury answered both questions in the negative.

Under the instructions from the Court, if said questions were answered "No", it was unnecessary for the jury to answer if such failure or use was negligence or if such negligence was the proximate cause of plaintiff's alleged damages. No objections were made by plaintiff to the form of these

instructions or to any other part of the charge or issues.

In answer to another issue, the jury also answered that some of plaintiff's cattle were injured from drinking salt water from other sources wholly disconnected from the leak in defendant's line. The plaintiff made no objection to the submission of this issue and did not request the submission of an issue inquiring what proportion of the damages, if any, was proximately caused from such disconnected sources.

Upon the jury's answers to various special issues, the Court decreed that plaintiff recover nothing, and he appeals. His points will be considered in their order.

■ By Point 1, the appellant complains that the Court erred in requiring him to testify "whether or not he had failed and refused to render his property [that involved] for taxes in Eastland County." (Bill of Exception.)

When the plaintiff was on the witness stand, and after he had testified to the number and ownership of the stock lost and value thereof, he was asked on cross examination whether or not he had failed and refused to render his taxes in Eastland County. The question and answer was objected to on the ground that the same was irrelevant, immaterial and prejudicial. The objection was overruled and the witness testified that he did not render his property for taxes in Eastland County for 1942, and on being questioned further replied that he did not render same for any previous years in Eastland County, and that the assessor in Stephens County (adjoining) had not procured his rendition, and that he had not paid taxes on his property at any time within the past four years.

Such is the substance of the testimony elicited, and the bill of exception approved by the Court and by which plaintiff perpetuates said alleged error is qualified by the court as follows: "By this suit the plaintiff was seeking to recover of the defendant the value of certain cattle which he alleged had been killed and injured by the negligence of the defendant, and the number of cattle owned by the plaintiff and their value in January, 1942, or prior thereto, became a material issue to be determined by the jury. A great deal of testimony was heard as to the number of cattle owned by plaintiff in the early part of 1942 and their value; the plaintiff himself testifying in detail as to the different cattle owned by him; the plaintiff undertaking to give the value on

the dates in 1942 before and after the alleged injury to his cattle. It was in connection with the cross examination of the plaintiff by the defendant's counsel that the testimony complained of was given. Among other questions the plaintiff was asked as to whether or not he had had conversation with one Mr. Gregory, Deputy Tax Collector of Eastland County, in March, 1942, to which witness answered that he could not remember, or some similar statement."

All phases of plaintiff's suit were being closely contested by the defendant, which was denying that the plaintiff owned the number of cattle alleged by him as well as the value placed by him upon his cattle. Under these circumstances and in the light of the court's qualification, we are of the opinion that the trial court did not err in permitting the counsel for defendant to ask the defendant on cross examination whether he had rendered his stock for taxes in Eastland County. Such testimony was material on the issue of the number of cattle, plaintiff's ownership, and their value, as well as a proper predicate for plaintiff's impeachment by the witness Gregory, who endeavored to obtain from him about the time involved a rendition of his stock.

Plaintiff's testimony is to the effect that he had not rendered his stock for taxes during the previous five years, and in response to questions propounded by the Eastland County Assessor, plaintiff had stated "I render my taxes in Breckenridge (Stephens County)." In that same connection he admitted that he lived in Eastland County. The defendant was exploring the possible true or correct valuation of the stock alleged to have been killed and was endeavoring to present plaintiff's renditions, or show the amount of taxes he had paid on the same, though no rendition had been made at the usual time.

■ In substance and effect, Point 2 raises a like question. It is there complained that the Court erred in admitting, over the plaintiff's objection, the testimony of one Gregory, Deputy Tax Collector for Eastland County, that he asked for plaintiff's rendition for taxes for 1942, and that plaintiff did not render them to said deputy, but told him he rendered his property in Stephens County. This is complained of as being immaterial, irrelevant and prejudicial.

In approving the bill of exception pertaining to this alleged error, the trial court qualified the same as follows: "The testi-

mony of the witness, Gregory, complained of by the plaintiff was admitted by the court after the plaintiff as a witness had testified on cross examination as to the number, kind, and value of the cattle owned by him on January 1, 1942, in Eastland County, Texas, and it was after the introduction of this testimony that the plaintiff was asked on cross examination if he had not in March, 1942, refused to render his property for taxes in Eastland County to Deputy Tax Assessor, Gregory, to which question the witness answered, 'I do not remember.' The testimony was admitted on the theory that the number of cattle and their kind and value owned by the plaintiff in January, 1942, was a material issue and that any statement made by the plaintiff to the witness, Gregory, or any other person concerning the kind of cattle and their value, was admissible testimony."

We are of the opinion that the bill as explained reflects fully and clearly the materiality of the testimony. The cross examination was pertinent, and no error is disclosed by points 1 and 2.

As to Point 1, it will also be observed that whereas the appellant asserts the court required him to testify that he had not *paid* his taxes; the bill of exception shows that he was merely asked if he had *rendered* his taxes.

By Point 3, the appellant insists the judgment herein should be reversed because of improper argument of defendant's counsel, which the appellant in the body of his tendered bill states was as follows: "I hold in my hand here a list of Plaintiff's property; he has not paid one thin dime of taxes in Eastland County for the five years that he has been out there; I mean to see that the attention of the tax authorities of Eastland County is called to this matter. This is a very important suit. While the plaintiff has not paid a thin dime of taxes in Eastland County he asks a jury of Eastland County to give him a judgment for more than four thousand dollars. I ask you to answer issues one (1) and eleven (11), four (4) and fourteen (14) 'No', and I assure you that the Defendant and every other patriotic tax paying citizen of Eastland County will approve your verdict, and which error is further reflected by Bill of Exceptions with reference thereto, said argument being addressed to no proper issue in the case and obviously inflammatory and an effective appeal to prejudice."

The plaintiff's objection to the argument was not presented at the time the same was made, but at the time the bill of exceptions was tendered. He admits that he made no request at the time of the argument for instructions by the court that the jury disregard the same.

The true import of the bill is not reflected by the above excerpt, but by the trial court's qualification taken in connection therewith. That qualification is as follows: "In this bill of exception, complaint is made by the plaintiff of the certain purported argument made by V. T. Seaberry, Attorney for the Defendant, while arguing before the jury. Since no complaint was made to the court of the argument now complained of, I cannot be clear as to just what occurred, but as I now recall, Mr. Seaberry, in opening the argument for the defendant, discussed in a general way the attitude of the plaintiff throughout the trial and his failure to render and pay taxes over a period of several years; and that it was in this connection that he referred to the failure of the plaintiff to pay taxes either in Stephens or Eastland County over a period of several years; and *that later in the same argument*, Mr. Seaberry discussed perhaps many of the special issues submitted to the jury and called especial attention to Special Issues 1 and 11 and 4 and 14; discussing the testimony of various witnesses in connection with the issues named; then stated to the jury that from the testimony before them, he felt that Issues 1 and 11 and 4 and 14 should all be answered 'No'." (Italics ours.)

The above is the extent to which the trial court ratified and approved the bill of exception. As qualified and approved it is materially different from what the bill would have been had it been approved as tendered.

The trial court refers to appellant's complaint (in tendered bill) as addressed to what the Court designates as "certain purported argument" by defendant's counsel; and the trial court then proceeds to state that the appellant made "no complaint" to the argument when it was made and states that for that reason the court was not clear as to just what occurred. (This illustrates the importance of timely objection to improper argument.)

The trial court then proceeds by his qualification to state that the attorney in "opening" the argument for the defendant dis-

cussed in a general way the attitude of the plaintiff throughout the trial and his failure to render said property and pay taxes thereon over a period of several years. In that connection the Court certifies the attorney referred to the failure of the plaintiff to pay said taxes either in Stephens or Eastland Counties.

In his qualification the trial court then explains or nullifies another phase of the "tendered" bill by stating that later in the same argument the attorney discussed the many special issues submitted to the jury, called attention to Issues 1 and 11 and 4 and 14, and then drew inferences from the testimony discussed that such issues should be answered in the negative. In this there was no error. As said in Dallas Railway & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304, 310: "Much latitude is allowed an attorney in presenting his client's cause to the jury. Broadly speaking, counsel may exercise the right to advise the jury how, in his opinion, from the evidence, the issue submitted should be answered. He may specifically say issues from 1 to 20 should be answered 'yes,' or issues from 21 to 35 should be answered 'no,' but it would be highly improper for counsel to appeal to the jury that if they wanted plaintiff or defendant to recover in the suit to answer the issues in a certain way."

To same effect is Texas & N. O. R.R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160.

This Court cannot proceed upon the theory that the language in the "tendered" bill correctly states matters of alleged error where the trial court's qualification is to the contrary. In the instant case the trial court does not approve such statements in the "tendered" bill as the following: (1) "I hold in my hand here a list of plaintiff's property", etc.; (2) "I mean to see that the attention of the tax authorities of Eastland County is called to this matter," etc.; (3) "I assure you that the defendant and every other tax paying citizen of Eastland County will approve your verdict" if you answer certain questions in a stated way.

If these and other unauthenticated utterances were made, the bill as qualified should not have been accepted, but a bystander's bill should have been produced to counteract the effect of the trial court's qualification.

The bill of exception as approved manifests no error. In other words, the trial court does not certify to the statements he designates as "purportedly" made by defendant's counsel.

Pertaining to the matters involved in Points 1 and 2, it was competent to show the number and the value of the cattle which the plaintiff rendered for taxes and claimed to be the owner of at the time they were injured or killed as alleged. If he rendered none, such evidence was doubly competent. It was equally competent to know if the plaintiff paid any taxes on these cattle, even if he did not render them for taxes in the usual time and way. Value, ownership and number were contested points.

■■ One's rendition for taxes and the values upon which same are paid are material and admissible by way of impeachment or contradiction under such circumstances. They amount to admissions against interest. Ft. Worth & Rio Grande Ry. Co. v. Chisholm, Tex.Civ.App., 146 S.W. 988; Clark v. City of Eastland, Tex. Civ.App., 134 S.W.2d 509; Wise v. City of Abilene, Tex.Civ.App., 141 S.W.2d 400; Eastern Texas Ry. Co. v. Scurlock, 97 Tex. 305, 78 S.W. 490; Chicago, R. I. & T. Ry. Co. v. Carr, Tex.Civ.App., 89 S.W. 35; State v. Doom, Tex.Civ.App., 278 S.W. 255; Gulf C. & S. F. Ry. Co. v. Koch, Tex.Civ.App., 144 S.W. 1035.

From the first authority, 146 S.W. 988, we have the holding: "There was error also in refusing to permit appellant to introduce in evidence the original sworn rendition of the property in question for taxes made by the appellee in January preceding the killing, and in refusing to require the appellee while a witness on the stand to answer whether or not he had rendered the jack for that year at the sum of $200. This evidence was admissible as an admission by appellee and by way of impeachment or contradiction of his testimony; he having sworn that the animal was worth $1,200 and that its value was the same in January preceding." Citing many authorities.

It was held in the Carr case, 89 S.W. 35, supra, that: "Where the owner of property, suing for damages thereto, testified as to the value before and since the injury complained of, it is proper on cross-examination to ask him what he will take for it."

The argument of the attorney based upon the testimony reflected by the foregoing

bills as approved, was not improper under the rule stated in 41 Tex.Jur. p. 769, as follows:

"In arguing the case to the jury, an attorney may with propriety freely discuss or comment on such facts as are in evidence or admitted in the pleadings. He may give his view of the evidence, explain and interpret it, and discuss its weight and probative effect or want thereof. He is allowed considerable latitude in this regard, provided always he is discussing issues of fact which the evidence tends in some measure to prove."

\* \* \* \* \* \* \*

"Fair criticism of a witness and his testimony, when justified by the record, is not objectionable; indeed in this respect counsel is allowed great latitude. He may broadly discuss the conduct and character of witnesses as revealed by the evidence, and comment on the manner in which they give their testimony. Further, when there are circumstances reasonably indicating that a witness has falsified, an attorney is justified in exposing the falsehood." 41 Tex.Jur. p. 787.

Further, if it be conceded the argument was in some respects improper, which we do not hold, nevertheless appellant made no objection to the argument at the time and made no request that the court instruct the jury not to consider the same. In that case, the "second rule" referred to by our Supreme Court in Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, 1056, would have application here. In that opinion Judge Sharp repeats the rule formerly announced in Robbins v. Wynne, Tex.Com.App., 44 S. W.2d 946, as follows: "The second rule is: If the argument is of such a nature or is made under such circumstances that if objection is made at the time, so that counsel can offer an explanation or make such corrections as will make such argument proper or harmless, or if the argument is of such a nature that its withdrawal by counsel or instruction by the court to the jury to disregard same will cure the error and render the effect of the argument harmless, the complaining party must object to such argument and request the court to instruct the jury not to consider same; and failure so to do waives the error."

See also Moncada v. Snyder, 137 Tex. 112, 152 S.W.2d 1077; Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238.

As also held in Dunning v. Popular Dry Goods Company, Tex.Civ.App., 146 S.W.2d 835, 837: "In our opinion, an instruction or admonition by the court would have cured the matter. Plaintiff had an opportunity to reply thereto. It may be, in reliance on that right, he sat silent when the argument was made. In our opinion reversible error is not shown by the assignment. Plaintiff should have objected thereto or requested a charge that the jury disregard same. Texas Employers' Ins. Ass'n. v. Moore, Tex.Civ.App., 46 S.W.2d 404; Harris v Sadler, Tex.Civ.App., 55 S.W.2d 173; City of Waco v. Rook, Tex.Civ.App., 55 S.W.2d 649; Emberlin v. Wichita Falls R. & Ft. W. R. Co., Tex.Com.App., 284 S.W. 539."

Appellant's Point 4 is to the effect that the jury's answers to Special Issues 1 and 11 and 4 and 14 "are unsupported by any competent testimony", and "contrary to the testimony."

The appellee insists that the matters inquired about in these issues were controverted issues of fact to be determined by the jury, and that the jury's answers thereto on conflicting evidence, about which reasonable minds could differ, are supported by competent testimony.

Said issues are as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that prior to the break the defendant failed to inspect the pipe line in the west pasture of plaintiff's known as the 6-inch pipe line to discover defects, if any therein existed? Answer 'Yes' or 'No'. Answer: No."

"Special Issue No. 11: Do you find from a preponderance of the evidence that defendant failed to properly inspect on or before January 9th, 1942, the 4-inch pipe line on the Miller tract? Answer 'Yes' or 'No'. Answer: No."

"Special Issue No. 4: Do you find from a preponderance of the evidence that the defendant was using excessive pressure on the said 6-inch line in the west pasture of the plaintiff at the time it broke? Answer 'Yes' or 'No'. Answer: No."

"Special Issue No. 14: Do you find from a preponderance of the evidence that at the time the line broke on the Miller tract that the defendant was using excessive pressure on said line? Answer 'Yes' or 'No'. Answer: No."

As previously noted, the plaintiff filed no objections to the form or substance of either of the above issues, or to any other part of the charge. The trial court over-

ruled two separate motions of defendant for an instructed verdict and the statement of facts herein embraces 662 typewritten pages.

Our inspection of the testimony convinces us that each issue was based upon conflicting testimony, and that the evidence reasonably supports the verdict returned by the jury. Point 4 is overruled.

■ Points 9, 10 and 11 are also overruled. The material issues presented by this case and the pleadings thereof are clearly referable to and controlled by the law of negligence. The defendant's right of way privileges were based upon a contract for easements, as shown by the testimony. The operation of a pipe line is not a nuisance per sé. Turner v. Big Lake Oil Company, 128 Tex. 155, 96 S.W.2d 221; Cosden Oil Company v. Sides, Tex.Civ. App., 35 S.W.2d 815, 818. The first opinion refers with approval to Justice Funderburk's opinion in the Cosden case, in the opinion of which this court said:

"We believe that plaintiffs' petition in this case affirmatively showed no right of recovery, in the absence of the existence of negligence, and we further believe that said petition was sufficient to state a cause of action for negligence to the extent at least as hereinbefore considered. Upon another trial, if the facts as to negligence be in dispute, suitable issues as to same should be formulated and submitted to the jury."

Of this opinion Judge Cureton said in the Turner case [128 Tex. 155, 96 S.W.2d 223]: "In the Cosden Oil Co. case, cited above, the Court of Civil Appeals had before it a case involving damage to land brought about by the flow of 'oils, waste oil and products.' The court in an able opinion by Associate Justice Funderburk held, correctly we think, that no right of recovery was shown independently of the existence of negligence."

The governing rules for the recovery of damages in such cases are discussed and applied in the following authorities: East Texas Oil Refining Company v. Mabee Consolidated Corporation, Tex.Civ.App., 103 S.W.2d 795; Lone Star Gas Company v. Hutton, Tex.Com.App. 58 S.W.2d 19; Houston & E. T. Ry. Co. v. Adams, 58 Tex. 476; Texas Power & Light Co. v. Casey, Tex.Civ.App., 138 S.W.2d 594, and it is unnecessary to discuss authorities based on other theories.

■■ Appellant insists by Point 7 that since there is a total absence of testimony of any injury to his cattle from salt poisoning, or from drinking salt water from any source, Special Issue 37 has no place in the defense, and that the jury's answer thereto is without any support in the evidence and should not be considered as basis for the judgment.

The defendant's answer to this proposition is that the jury having found, upon competent testimony, in response to Issue 37, that a part of the injuries to plaintiff's cattle in the east pasture resulted from drinking salt water from other sources wholly disconnected from any leak in the defendant's line, and since the proportion of such injuries from salt water was not submitted to the jury or requested, the court properly decreed that plaintiff recover nothing.

The defendant pleaded such state of facts as a bar to any recovery, and the court submitted special issues No. 37 as follows: "Do you find from a preponderance of the evidence any part of the injury to plaintiff's cattle, if they were injured, in the east pasture resulted from drinking salt water from other sources wholly disconnected from the break in the 4-inch line on the Miller tract? Answer 'Yes' or 'No'. Answer. Yes."

Here we are again presented with the question of the existence of testimony on a material issue. We conclude that the testimony relating thereto was conflicting and sufficient to support the verdict.

The legal effect of the jury's finding is stated by Judge Critz in the opinion of Sun Oil Company v. Robicheaux, Tex. Com.App., 23 S.W.2d 713, 715, as follows: "The rule is well established in this state, and supported by almost universal authority, that an action at law for damages for tort cannot be maintained against several defendants jointly, when each acted independently of the others and there was no concert or unity of design between them. In such a case the tort of each defendant is several when committed, and it does not become joint because afterwards its consequences, united with the consequences of several other torts committed by other persons in producing damages. Under such circumstances, each tort-feasor is liable only for the part of the injury or damages caused by his own wrong * * *."

The following holding is from Southwestern Drug Corporation v. Taylor, 134 Tex. 41, 131 S.W.2d 955, 956: "Joint and several liability cannot be imposed upon the

defendants, who acted individually under separate contracts and not jointly under a joint contract. The difficulty of proving the case does not alter the principle of decision."

For other authorities so holding, see Mauk v. Texas Pipe Line Co., Tex.Civ. App., 93 S.W.2d 820; Tucker Oil Co. v. Matthews, Tex.Civ.App., 119 S.W.2d 606; Paluxy Asphalt Company v. Helton, Tex. Civ.App., 144 S.W.2d 453; Gulf C. & S. F. Ry. v Seydler, Tex.Civ.App., 132 S.W.2d 453; City of Austin v. Howard, Tex.Civ. App., 158 S.W.2d 556.

The conclusions above expressed either overrule other points not mentioned or render it unnecessary to consider the same. For the reasons assigned the judgment of the trial court is affirmed.