TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00544-CV







Ethel Domel and Norman Domel, Appellants



v.



City of Georgetown, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 94-020-C368, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING










DISSENTING OPINION






 The majority holds that the City of Georgetown established that the intermittent
stream flowing through the Domel's property meets the criteria of a watercourse as a matter of
law. Consequently, the City's lawful discharge of effluent from the upstream wastewater
treatment plant did not constitute a taking or damage the Domel's property. Accepting as true
evidence in favor of the Domels, indulging every reasonable inference, and resolving all doubts
in their favor, I conclude that Mrs. Domel's affidavit raises a material issue of fact about whether
the intermittent stream meets the criteria for a watercourse under Texas law. Respectfully, I
dissent.

 Surface water is categorized into two general types: diffuse surface water and
water that is within a watercourse. Diffuse surface water belongs to the owner of the property
on which it gathers, so long as it remains on that land before it passes into a natural watercourse. 
See Turner v. Big Lake Oil Co., 96 S.W.2d 221, 228 (Tex. 1936). Water in a watercourse is the
property of the State, held in trust for the public. See Tex. Water Code Ann. § 11.021(a) (West
1988). A watercourse has (1) a defined bank and beds, (2) a current of water, and (3) a
permanent source of supply. See Hoefs v. Short, 273 S.W. 785, 787 (Tex. 1925). As the
majority recognizes, the bed and banks of a watercourse may be "slight, imperceptible, or absent"
in some instances without losing its character as a watercourse. Id. Additionally, the current of
water "need not be continuous and the stream may be dry for long periods of time." Id. Finally,
regarding the third element, the Hoefs court stated that "the stream must be such that similar
conditions will produce a flow of water, and that these conditions recur with some regularity, so
that they establish and maintain a running stream for considerable periods of time." Id. at 788. 

 Mrs. Domel stated that she and her husband have owned the property since 1948
and she was familiar with the appearance of the property and the area at issue. She characterized
the disputed property as a "low place" or a "drainage area." Before the City started pumping
effluent in October 1993, the seeps in the area were not enough to create a permanent source of
water supply. Also before October 1993, the only time there was a steady flow of water through
the area would be after significant rains. In a typical year before October 1993, the area was
frequently dry during the late spring, summer, and early fall. During the remainder of the year,
there might be water in the area, but the volume would vary greatly. Although the City's utility
director inspected the area before 1990 and concluded that it was a watercourse with well-defined
bed and banks, Mrs. Domel disputed this description. She stated that before October 1993, the
area did not have a defined channel with well-defined bed and banks. Even with the relentless
flow of the City's effluent, the area does not have a well-defined bed, banks, or channel. 

 Accepting as true Mrs. Domel's affidavit, indulging every reasonable inference,
and resolving all doubts in favor of the Domels, I would hold that her affidavit raises an issue of
material fact about whether the area at issue is a watercourse. Although I agree that the issue of
whether an area is a watercourse may be decided as a matter of law, based on the evidence
submitted in this case, I do not agree that the City has established the existence of all three Hoefs
elements as a matter of law. I would reverse the summary judgment and remand the cause to the
district court for further proceedings.



 


 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Filed: November 12, 1999

Publish



ER>


DISSENTING OPINION






 The majority holds that the City of Georgetown established that the intermittent
stream flowing through the Domel's property meets the criteria of a watercourse as a matter of
law. Consequently, the City's lawful discharge of effluent from the upstream wastewater
treatment plant did not constitute a taking or damage the Domel's property. Accepting as true
evidence in favor of the Domels, indulging every reasonable inference, and resolving all doubts
in their favor, I conclude that Mrs. Domel's affidavit raises a material issue of fact about whether
the intermittent stream meets the criteria for a watercourse under Texas law. Respectfully, I
dissent.

 Surface water is categorized into two general types: diffuse surface water and
water that is within a watercourse. Diffuse surface water belongs to the owner of the property
on which it gathers, so long as it remains on that land before it passes into a natural watercourse. 
See Turner v. Big Lake Oil Co., 96 S.W.2d 221, 228 (Tex. 1936). Water in a watercourse is the
property of the State, held in trust for the public. See Tex. Water Code Ann. § 11.021(a) (West
1988). A watercourse has (1) a defined bank and beds, (2) a current of water, and (3) a
permanent source of supply. See Hoefs v. Short, 273 S.W. 785, 787 (Tex. 1925). As the
majority recognizes, the bed and banks of a watercourse may be "slight, imperceptible, or absent"
in some instances without losing its character as a watercourse. Id. Additionally, the current of
water "need not be continuous and the stream may be dry for long periods of time." Id. Finally,
regarding the third element, the Hoefs court stated that "the stream must be such that similar
conditions will produce a flow of water, and that these conditions recur with some regularity, so
that they establish and maintain a running stream for considerable periods of time." Id. at 788. 

 Mrs. Domel stated that she and her husband have owned the property since 1948
and she was familiar with the appearance of the property and the area at issue. She characterized
the disputed property as a "low place" or a "drainage area." Before the City started pumping
effluent in October 1993, the seeps in the area were not enough to create a permanent source of
water supply. Also before October 1993, the only time there was a steady flow of water through
the area would be after significant rains. In a typical year before October 1993, the area was
f