## HANSEN v. PONDER et al. (No. 8298.)

Court of Civil Appeals of Texas. San Antonio. Dec. 4, 1929.

Rehearing Denied Jan. 15, 1930.

See, also, 3 S.W.(2d) 426; 5 S.W.(2d) 767.

E. B. Ward, S. Eldon Dyer, James M. Taylor, and Lewis H. Jones, all of Corpus Christi, for appellant.

Kleberg & North, of Corpus Christi, E. H. Crenshaw, Jr., of Kingsville, for appellees.

FLY, C. J. This is a suit for damages filed by appellant against Galveston, Harrisburg & San Antonio Railway Company, the San Antonio, Uvalde & Gulf Railway Company, and A. R. Ponder, its receiver, Morgan's Louisiana & Texas Railroad & Steamship Company, and the Sumner-Sollitt Company. The cause was tried originally in 1926, and from an adverse judgment Charles Hansen appealed to this court, and in March, 1927, the judgment was affirmed. 293 S. W. 219. A writ of error was granted by the Supreme Court, and on November 30, 1927, the judgments of the district court and this court were reversed as to the three railway companies and affirmed as to Sumner-Sollitt Company. Hansen v. Ponder (Tex. Com. App.) 300 S. W. 35, 40. On the former trial a verdict was instructed for all of the defendants.

In the opinion of the Commission of Appeals, rendered through Hon. Luther Nickels, there are, as said by Saint Peter of the writings of Paul, "some things hard to be understood"; but after a strict scrutiny of the three printed pages of the Southwestern Reporter, we have concluded that the opinion intends to say that a verdict should not have been instructed against appellant. We do not understand why Sumner-Sollitt Company was given an affirmance. However, the cause was fully presented, this time to a jury through special issues, and upon their answers thereto judgment was again rendered against the claim of appellant.

We reiterate our holdings on the former appeal, and again state that there was no evidence of negligence on the part of either of the railway companies that caused the logs piled on the car to roll down upon and injure appellant. The cause of the logs slipping, which were loaded on the cars, which had been delivered by the San Antonio, Uvalde & Gulf Railroad Company to the Sumner-Sollitt Company, and were at the time of the accident standing on a siding used and controlled by the Sumner-Sollitt Company, was the cutting of the wires by Hansen. The jury found, in accordance with the evidence, that the logs or piling were properly loaded on the cars at the initial point of the journey from Louisiana to Texas; that the cars were not negligently overloaded; that the two cars were not negligently delivered for unloading, with the equipment in an insecure condition, so as to render them unsafe for persons unloading the cars. The jury found that appellees did not fail to make proper and sufficient inspection of the cars and equipment for defects, that there was no negligence in not discovering defective loading, and that they did not discover any such defects and deliver the cars with that knowledge. The jury also found that the repairs of the equipment at Pleasanton on the line of the terminal road were not negligently made; that no negligent acts of either of the appellees proximately caused the injuries to appellant. They also found that appellant attempted to unload the cars in an unsafe manner, and that his acts were negligent, and that such negligence was the proximate cause of his injuries.

We hold, as in our former opinion:

"Taking up the different grounds of negligence upon which appellant relied, we find as heretofore stated that no negligence in loading was shown, no testimony that the car was not properly equipped for transporting piling, nor that the equipment was not properly maintained, nor that the car was over-

loaded, nor that the injury occurred from the bare fact that appellant went upon it, nor that it was neglected to properly secure the piling, nor that the stakes were not of sufficient strength, nor that the inspections were not properly performed, nor in not warning appellant about going on the car, nor in permitting the car to get out of fix, nor in any other respect. On the other hand, all these matters of negligence were shown not to exist. When appellant went upon the piling, he nor any one else discovered any indications of the piling being insecurely on the car, but it appeared to be perfectly secure and, indeed, was securely fastened on the car until appellant himself cut the wire running across the car and loosened the load up so that it rolled over to the south of the car with such force as to break the standards. They had held the logs in place through the long journey from New Orleans to Corpus Christi, and only gave away after the acts of appellant had put a strain upon them which could not have been anticipated.

"When the car was inspected at North Pleasanton and it was ascertained two of the standards were slipping, they were tied together so that they did not further slip, and when the standards broke it was not at the place where the rods had been put through. No defects were found in the material used for the standards."

The evidence on the former trial, as on this, showed that there was not a circumstance pointing, even slightly, toward any defect, open or concealed, in the loading of the logs, until Pleasanton was reached, and the discovered defect, which for the first time showed itself there, was repaired, as far as human ingenuity and knowledge could suggest.

After citing Gulf, W. T. & P. Railway Co. v. Wittnebert, 101 Tex. 368, 108 S. W. 150, 14 L. R. A. (N. S.) 1227, 130 Am. St. Rep. 858, 16 Ann. Cas. 1153, and other authorities, it would appear that the writer of the opinion of the Commission of Appeals was of the opinion that the facts did not indicate negligence on the part of the carriers. However, we are not sure of this, and trust that we may not be modern members of that class who found Paul's writings were hard to understand, and are described as the "unlearned and unstable" who wrested the said writings "unto their own destruction." The decision removes all doubt, so far as it can do, as to the claim that Hansen was an employee of the railroad companies, while unloading the cars. The writer says: "The proof and his averments show that he was an employee of Sumner Sollitt Company, who had the exclusive right to direct and who directed his employee's movements. * * *" That utterance would, it seems, dispose of the argument that appellees still had possession of the cars and were responsible for accidents occurring during the unloading. The ruling of the Commission of Appeals would dispose of the contention that appellant was an employee of the railroad companies, and consequently could not be guilty of contributory negligence so as to bar a recovery. Contributory negligence was sufficiently pleaded, and we overrule the contention of appellant as to contributory negligence.

■ This case had been on the docket of the district court since 1925, had been tried at least twice, and yet appellant had just discovered a witness who would swear that he had seen the cars just before the accident and saw the "broken and bad condition of the stakes." It is strange that Hansen and his assistants did not see such stakes. The court properly refused the new trial on the ground of newly discovered evidence because of no diligence in discovering the evidence, and because it was not probably true. This man Carter says he saw the cars just before they were unloaded, sent men to take the logs off of those cars, and saw the men who were unloading the cars, but said nothing to Hansen, or any one else, about the bad stakes. He never mentioned what he had seen until after the second trial, when he had a friend visiting him during sickness. It seems utterly improbable, and the court was justified in rejecting the testimony.

■ Some of the jury, it seems, spoke about Sumner-Sollitt Company not being in the case, and thought they were perhaps liable, but every one disclaimed that it had any influence on their verdict. As one of the jurors said: "As I saw it, I was dealing with the railroad company, and so far as that part of it was concerned I considered the railroad company was innocent in it. * * * I had made up my mind that there shouldn't be any verdict against the railroad company before we considered the questions. I don't know whether anybody else made up their minds to that effect or not. They did not discuss to that effect before they opened the questions." The talk about the liability of Sumner-Sollitt did not and could not have influenced the verdict for the railway companies, because there was no doubt in the mind of any juryman that no liability attached to any railroad company. To say that a juryman could not form an opinion in his mind as to the liability of a party to a suit in tort would be to hold that he must have a mind incapable of forming an opinion and must answer certain questions like an automaton. No rule of law should seek to dethrone a juror's reason and render him incapable of forming an opinion from evidence. He could still have his opinion as to the guilt or innocence of a party and answer the questions propounded to him truthfully and intelligently, without allowing his desire to find for a certain party to influence his answers. Under the circumstances, if all the jurors had thought that

Sumner-Sollitt was the party guilty of negli-gence, that could not have influenced any answer made by the jury. The statute of 1925 (article 2234) provides: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material." It is not pretended that any testimony was received after the jury retired or that any communication was made, and that the district judge abused his discretion in holding that there was no misconduct which could possibly have influenced the answers to the special issues. The sacredness of the right to be heard by an impartial jury in open court will be sustained, but there can be no wisdom in dropping into heroics and hysterics when some juror or jurors may express an opinion in the jury room which reason and common sense indicate could not have influence on the verdict.

█ The pleading was sufficient to admit evidence of contributory negligence and the issue was confined to the manner in which Hansen attempted to unload the car. That was specific enough. It was, as claimed by appellant, the duty of the carrier to deliver the cars in reasonably safe condition for unloading; but it was not obligated to deliver in such condition as to be proof against folly, ignorance, or negligence of any servant of a consignee who might undertake to unload it. The fifth, sixth, seventh, eighth, ninth, and tenth propositions are overruled.

The eleventh proposition claims that the evidence showed negligence on the part of appellees, but the jury has found otherwise, and this court concludes that they were justified in so finding.

An examination of the remaining propositions discloses that they are not meritorious, and they are all overruled.

The judgment will be affirmed.