## DE GARZA et al. v. MAGNOLIA PE-TROLEUM CO.

### No. 10000.

Court of Civil Appeals of Texas.
San Antonio.
July 14, 1937.

Rehearing Denied Aug. 11, 1937.

Mann & Mann, and Neel & King, all of Laredo, for appellants.

W. H. Francis, Walace Hawkins, and Raymond M. Myers, all of Dallas, and Thos. H. Ward, of Laredo, for appellee.

MURRAY, Justice.

Appellants, Paula V. de Garza and her fourteen children, instituted this suit in the 111th district court of Webb county against appellee, Magnolia Petroleum Company, a corporation, seeking to recover $15,000 actual damages, and $10,000 exemplary damages, and for the issuance of an injunction. The damage was alleged to have been caused by appellee permitting salt water to flow from its oil lease down a draw and then on the land and into dirt tanks or reservoirs belonging to appellants.

The trial was to a jury, but when appellants, who were plaintiffs below, finished the introduction of testimony, and before appellee had offered any evidence, the trial court granted appellee's motion for an instructed verdict, withdrew the case from the jury, and rendered judgment that appellants take nothing by their suit for damages, but granted the injunction prayed for by appellants.

The Magnolia Petroleum Company makes no complaint of the action of the trial court in granting the injunction, but Paula

V. de Garza and her fourteen children have appealed from that part of the judgment which denies to them any recovery by reason of their suit for damages.

The record shows that appellants have, for a number of years, operated a ranch, known as the La Violeta ranch, located partly in Jim Hogg county and partly in Zapata county. The ranch is composed of about 13,000 acres, 6,000 acres of which are owned in fee simple by appellants, and the remaining 7,000 acres is leased land. There is a field of about 150 acres on the ranch which is farmed, and the rest of the ranch is devoted to the cattle business.

Appellee is the owner of certain oil leasehold estates in the Randado oil field, located in Jim Hogg county, about four miles north of the La Violeta ranch. Appellee has for a number of years operated these leases, producing therefrom substantial quantities of oil and salt water.

Appellants formerly sued appellee, and an agreed judgment was entered, which judgment reads as follows:

"Paula V. de Garza et al. vs. Magnolia Petroleum Company. No. 9947.

"In the District Court of Webb County, for the 111th Judicial District of Texas.

"On this 24th day of March, A. D. 1931, came on to be heard the above entitled and numbered cause, and the plaintiffs appeared by attorney, and the defendant having answered herein, and no jury having been demanded all matters of fact as well as of law were submitted to the Court for its determination. Announcement had previously been made and the Court had been advised that said cause of action was to be settled and compromised in accordance with a written agreement to be filed among the papers in this suit, and the plaintiffs having announced ready for trial, submitted to the Court for its consideration said compromise agreement which is in words and figures as follows:

" 'The State of Texas, County of Webb.

" 'Whereas, in Cause No. 9947, in the 111th District Court of Webb County, Texas, Paula V. de Garza and her fourteen children, namely: Martiniano Garza, Anastacio Garza, Pedro Garza, Humberto Garza, Lauro Garza, Medardo Garza, Maria Hortensia Garza Saldivar, joined proforma by her husband, Raymundo Saldivar, Felicidad Garza de la Pena, joined pro-

forma herein by her husband, Leopoldo de la Pena, Antonio Garza, Evangelina Garza Mayers, joined pro-forma herein by her husband, Luis Mayers, Laurentine Garza Rodriguez, joined pro-forma herein by her husband, Reynaldo Rodriguez, Aurora Garza Chapa, joined pro-forma herein by her husband, Jesus Chapa, and Rosa Garza, a feme sole and a minor, Rosario Garza, a feme sole and a minor, both acting herein by and through Paula V. de Garza, their lawful guardian, did, as plaintiffs, sue Magnolia Petroleum Company for damages alleged to have been sustained by them by reason of said water, oil and other refuse and waste substances being pumped or discharged out of oil wells on oil and gas leases owed and operated by the Magnolia Petroleum Company in Jim Hogg County in what is known as the Randado Pool or oil field. Said salt water was alleged to escape off of said lease onto land of plaintiffs.

" 'Whereas, said cause No. 9947 is now pending in the District Court of Webb County, in and for the 111th Judicial District of Texas.

" 'Whereas, the plaintiffs in above styled suit have filed suits or are asserting claims against four other corporations or companies that are operating wells and leases in said Randado Pool or oil field and although defendant, Magnolia Petroleum Company disclaims liability and denies that it has discharged or permitted salt water to escape from its wells or leases in any substantial amounts but asserts that damage, if any, sustained by plaintiffs is due to salt water, oil and other substances escaping or being discharged from oil wells and leases owned and operated by other companies in said Randado Pool or field.

" 'Whereas, the parties have reached an agreement to compromise and settle said suit whereby an agreed judgment will be entered in favor of plaintiffs against defendant for the sum of Two Thousand Five Hundred ($2,500.00) Dollars to cover all damages for which defendant, Magnolia Petroleum Company, is responsible to the date of said judgment, provided, however, this agreement and said agreed judgment are to operate as a release and discharge only as to Magnolia Petroleum Company; and it is expressly agreed between the parties hereto and the plaintiffs expressly reserve the right to prosecute suits and claims against any and all other corporation, corporations, person or persons that

may be responsible for or that have contributed to the injuries and damages sustained and claimed by plaintiffs.

" 'Whereas, as a part of the consideration for said compromise and settlement the agreement hereinafter stated has been reached in regard to future injuries or damages as related to Magnolia Petroleum Company.

" 'Now, therefore, in consideration of the premises, Paula V. de Garza, as owner of a community half and a life estate on lands described in plaintiffs' original petition, acting for herself, as a feme sole, and the other above named plaintiffs acting herein by and through Mann, Neel and Mann, their attorneys of record, covenant and agree as follows:

" '1. That agreed judgment will be entered in the above entitled and numbered cause whereby defendant, Magnolia Petroleum Company, will pay to plaintiffs the sum of Two Thousand Five Hundred ($2,500.00) Dollars in compromise of injuries and damages alleged and sustained by plaintiffs to the date of this judgment.

" '2. Said sum of Two Thousand Five Hundred ($2,500.00) Dollars to be paid under said agreed judgment is to operate as a release and discharge of all injuries and damages for which said Magnolia Petroleum Company is responsible to the date of said agreed judgment; but same is not in anywise to be considered as a payment or satisfaction of injuries or damages sustained by plaintiffs by reason of escape and discharge of salt water, oil or other substances from wells or leases of other persons or companies, other than Magnolia Petroleum Company, and plaintiffs reserve the right to prosecute and assert suits, causes of action and claims as against other persons or companies which through operations of their respective wells or leases in said Randado Pool or oil field are responsible for or have in anywise caused the damage and injuries sustained by plaintiffs.

" '3. Relative to avoiding and preventing damage in the future, defendant, Magnolia Petroleum Company, agrees that it will build, or cause to be built a sufficient number of earthen tanks to hold and maintain under all ordinary conditions the salt water, oil and other refuse substances from the oil wells and leases now being operated by it in Jim Hogg County in what is known as the Randado Pool; thereby preventing the flow of further salt water, oil and other refuse substances onto and over the land

and into tanks belonging to plaintiffs as described in plaintiffs' original petition. Said defendant Magnolia Petroleum Company, agrees that it will build said tanks or reservoirs at the most advantageous places and that it will use due diligence in all particulars with all the means available and at hand to store and hold in storage all the salt water and waste flowing from its said wells, and failure to do so on its part will constitute breach of covenant or negligence for which an action for future damages will lie. But it is understood and agreed that the Magnolia Petroleum Company will not be liable for damages caused by the escape of salt water, oil or other refuse matter resulting from an act of God or other casualties beyond its control provided reasonable efforts and diligence have been used by Magnolia Petroleum Company to impound its said salt water, oil and other refuse substances in storage tanks. The phrase or words "act of God or other casualties beyond its control" as used herein shall be construed as including excessive, unusual, unprecedented and unforeseen floods and rain storms.

" 'Paula V. de Garza, covenants that she and her attorneys, Mann, Neel and Mann, are authorized to execute this agreement and the agreed judgment; and agrees to indemnify Magnolia Petroleum Company and Mann, Neel and Mann against any claim or demand made by either or any of the other plaintiffs in contravention of this agreement and judgment that is to be entered herein.

" 'Witness our hands at Laredo, Texas, this the 24th day of March, A. D. 1931.

" 'Paula V. de Garza
" 'Mann, Neel & Mann,
" 'Attorneys for all Plaintiffs.
" 'Accepted:
" 'Magnolia Petroleum Company,
" 'By Thos. H. Ward.'

"The court after having heard the pleadings and evidence, and having duly considered said compromise agreement, is of the opinion that same is fair and is to the best interest of the minor plaintiffs, and that same should in all things be approved.

"The court further finds from the evidence presented that said damages are not permanent in their nature, and that Plaintiff, Paula V. de Garza, owns her community half in the lands described in plaintiffs' petition, and that she likewise has a life estate in said land under the terms of the last will and testament of her deceased

husband, Martiniano Garza, and that her 14 children named as plaintiffs in plaintiffs' original petition, own, share and share alike, the remainder interest in the community half of Martiniano Garza, deceased, under and by virtue of the terms of the last will and testament of Martiniano Garza, deceased.

"The court finds that the minor plaintiffs Rosa Garza and Rosario Garza, are entitled to an interest of $50.00 each in and to the money being paid under this agreed judgment, and no issue having been raised as to the apportioning and division of the $2,400.00 balance, the court finds that same should be apportioned and divided between the other plaintiffs in accordance with damage sustained by their respective interest in said land.

"It is therefore considered, ordered and adjudged by the court that the agreement, as incorporated in this judgment, be and the same is the judgment of this court.

"It is further ordered, adjudged and decreed by the Court that Plaintiff do have and recover of and from defendant, Magnolia Petroleum Company, judgment in the sum of $2,500.00 for which let execution issue, and that all moneys paid or collected under this judgment be apportioned and divided between plaintiffs in accordance with findings made by this Court.

"It is further ordered, adjudged and decreed by the Court that this judgment be without prejudice to plaintiffs' suits or claims against other persons or companies operating oil wells and permitting salt water, oil, or other refuse matter to be discharged or escape from their said properties.

"R. D. Wright
"Judge of the District Court of Webb County for the 111th Judicial District of Texas.
"O. K. Thos. H. Ward,
"O. K. Mann, Neel & Mann."

Appellants' suit herein is based upon an alleged breach of paragraph 3 of the agreement contained in the above judgment.

The substance of appellants' contention is that appellee has not built proper and sufficient tanks to contain the salt water and other refuse from its oil lease, but has permitted such salt water and other refuse to escape from its lease and onto the land and into the earthen tank of appellants; that their land has been injured thereby and two of their tanks have been so contaminated with salt that the water in these tanks is unfit for human consumption or for cattle to drink.

Appellants further allege that these two tanks, one located on Survey 39, and the other on Survey 150, were very important to the operation of the ranch, as the ranch headquarters were located near the tank on Survey No. 150, and all the people who lived on the ranch were dependent upon this tank for water for domestic use, and that the large tank on Survey No. 39 was the only source of permanent water supply on the ranch. At times all other tanks upon the ranch would go dry, but this large tank always contained water. These two tanks were down the draw leading from the Randado oil field, in which field was located the Magnolia Petroleum Oil Company lease. There were four other oil companies, namely, the Simms Oil Company, Houston Gulf Gas Company, Randado Oil Corporation, and Grayburg Oil Company, producing oil and salt water in the Randado field.

Appellants offered witnesses who on two occasions visited the Magnolia leases and found their tanks poorly constructed, and salt water escaping therefrom and running in the direction of the draw which drained ultimately onto the land of appellants, and on which draw the two tanks above described were located. Other witnesses testified as to salt water being in the draw between appellee's lease and appellants' ranch. The witnesses who visited the Magnolia lease also testified to seeing a salt crust on the ground near the Magnolia tanks, which indicated salt water had been permitted to escape from the tanks and evaporate, leaving the salt crust on the ground.

Appellants also proved that for a number of months all tanks on the ranch became dry except the large tank on Survey No. 39, and that all the cattle on the ranch were forced to water at this one tank. On two different occasions chemical analyses were made of the water in the large tank, and it was found that the salt content had increased twenty-three times. It was further shown that the cattle did not like the water and would only sip it or refuse to drink it altogether. A few of the cattle died, and others were gathered and sold at low prices. The evidence shows the difference in price between fat cattle and poor cattle. The evidence further shows that it was impossible to secure stock water on the ranch by drilling wells, as every well drilled on the ranch had produced salt water.

We are of the opinion that the evidence is insufficient to show a breach of the contract. The burden was upon appellants to introduce evidence showing that appellee did not use due diligence to prevent the flow of salt water from its lease onto the land and into the tanks belonging to appellants, and as a result of such lack of diligence a sufficient quantity of salt water had escaped from appellee's lease and flowed over the land and into the tanks of appellants to cause injury and damages.

The witnesses who visited appellee's lease did not state what quantity of salt water was escaping from the lease, and it is not shown, other than by circumstantial evidence, that this salt water ever reached appellants' land or tanks.

The evidence affirmatively shows that four other oil companies were producing salt water on the same watershed. The negative evidence offered is insufficient to show that the increase in salt content in the water in appellants' tanks may not have been caused by salt water from these other leases. Furthermore, the tanks were salty when the agreed judgment was entered into. Every shallow well on the ranch was salty. There was also salt on appellants' land at the time the agreed judgment was entered, and the $2,500 paid by appellee was in part to cover this damage. There were some old oil wells near the tank, known as the Alsworth wells, that had produced salt water. In other words, there were so many ways, and so many sources from which the salt that contaminated appellants' tanks may have come, that we cannot indulge in the presumption that this salt came from the leases of appellee, and certainly we cannot presume that it came in sufficient quantities to do damage. 13 Tex.Jur. 80; Major v. Hefley-Coleman Co. (Tex.Civ.App.) 164 S. W. 445; Mauk v. Texas Pipe Line Co. (Tex.Civ.App.) 93 S.W.(2d) 820; Turner v. Big Lake Oil Co. (Tex.Sup.) 96 S.W.(2d) 221; Cosden Oil Co. v. Sides (Tex.Civ. App.) 35 S.W.(2d) 815.

Furthermore, this court does not know judicially that salt water is poisonous or harmful to cattle. It occurs to us it would depend on the amount of salt in the water. The evidence shows that the tank had twenty-three times as much salt at one time, as it had previously had, but this does not establish the fact that the water was poisonous or harmful to the cattle. The fact that the cattle did not like the salt water proves nothing; from the evidence, they must have lived on the water for some six months. Pitzer & West v. Thigpen (Tex. Civ.App.) 68 S.W.(2d) 324.

The damages alleged were special damages, for which appellee would not be liable unless it had knowledge of the conditions and circumstances which produced the same. There is no evidence that appellee had any knowledge that the big water tank on Survey No. 150 was the only permanent water supply on the ranch; that all the cattle on the ranch would at times be compelled to water at this one tank; that the people living on the ranch had no other source of permanent water supply for domestic purposes; or that stock water could not be secured by the drilling of wells on the ranch.

Appellants contend that they were, in any event, entitled to recover damages to the land. The measure of damages to land would be the difference between the market value of the land before and after the alleged injury, or the difference in the value of the use before and after the alleged injury. The record does not contain sufficient allegations or proof to have enabled the jury to have applied this measure of damages. Texas & P. Railway Co. v. Graffeo, 53 Tex.Civ.App. 569, 118 S.W. 873; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.(2d) 57; Cosden Oil Company v. Sides, supra.

We also overrule appellants' contention that this case should be reversed to permit the awarding to them of nominal damages. Mitchell v. Heard (Tex.Civ. App.) 98 S.W.(2d) 832.

We are of the opinion that the trial judge properly granted appellee's motion for an instructed verdict.

The judgment of the trial court will be in all things affirmed.