**PALUXY ASPHALT CO. v. HELTON.**
**No. 11043.**

Court of Civil Appeals of Texas. Galveston.
Oct. 10, 1940.

Rehearing Denied Nov. 14, 1940.

R. T. Wilkinson, Sr., of Mt. Vernon, and Verne H. Maxwell and W. E. Tomlinson, both of Dallas, for appellant.

Maxberry & Vance, of Mt. Pleasant, for appellee.

CODY, Justice.

This is a suit by appellee to recover damages to his farm, consisting of 163 acres, from appellant, alleged to have been caused by appellant releasing into Trent Branch refinery waste, oil and salt water, which flowed down stream on to and through such farm. Recovery was not sought on the appellant's negligence, except as negligence is imputed by law to the violation of Articles 698 and 698a, of Vernon's Annotated Penal Code. Appellee's allegations were, in substance, that during the spring of 1937, and the winter and spring months of 1938, rains caused Trent Branch to overflow on part of appellee's farm, and that refinery waste was caused to collect on the soil and Bermuda grass, and that oil and salt were present in the water, which penetrated the mud in the bed and banks of the stream, which caused pollution of appellee's stock water, and damaged his soil and killed his grass and permanently damaged his land, so that his stock would not drink the water in the Branch, and parts of his pasture land and plowed land ad-

joining the Branch were permanently injured for pasturing and farming purposes to his damage in the sum of $1,500.

Appellant excepted to appellee's petition because it did not allege that the refinery waste, etc., were unlawfully and knowingly cast into the waters of Trent Branch; and because the allegations as to damages done by appellant were insufficient. Appellant further pleaded, in addition to a general denial, that many oil wells were located in the Talco oil field, and that many dehydraters were used in connection therewith; also, that there were other refineries in the area drained by Trent Branch, and if the Branch was polluted it was caused by others than appellant. Appellant further pleaded due care to prevent the escape of salt water and refinery waste, and that none had ever escaped except in extremely high water, and then not in sufficient quantities to cause the pollution complained of.

In response to special issues the jury found:

1. That during the years 1937 and 1938, the appellant's employees knowingly discharged, or caused to be discharged, on the waters of Trent Branch oil and refinery waste, which at one time covered the surface of such stream a distance in excess of 300 feet.

2. That such oil and refinery waste was carried down by its natural flow to appellee's land.

3. That as a direct result the reasonable cash value of appellee's land was permanently depreciated.

4. That the extent of this permanent depreciation, directly resulting from appellant's employees' acts, is $750.

5. That appellant did not maintain a trap at its plant adequate to prevent the escape of oil and refinery waste and the spread thereof over the waters of such stream for a distance in excess of 300 feet.

6. That the damages to plaintiff's land were not wholly caused by the acts of others.

The evidence disclosed that appellee's land was about five miles down stream on Trent Branch from appellant's plant. The Branch originated near the townsite of Talco, and drained practically the entire area of the Talco oil field. Oil had been discovered there in February or March of 1936, and there were extensive drilling operations for the rest of the year, and much crude oil drained from slush pits of different wells in to the Branch. The oil field is about nine miles long and from a quarter to a half mile wide. Appellant's refinery was completed about June, 1937. The American Liberty Pipe Line Company and the K. D. Refinery were also adjacent to the Branch. Owen H. Eichblat, Jr., an employee of the Game and Oyster Commission, testified that the major part of the waste of the oil wells in the townsite drained through a ditch known as the W.P.A. ditch into Trent Branch above appellant's plant, and had no connection with appellant's plant. Oil placed on the streets of Talco, before it became worked in, was carried by rain down such ditch; that in 1937 a well belonging to Housh & Thompson got loose, and its output was held down the Branch. He testified that the townsite and surrounding parts of the field created the most serious part of the pollution problem, and that the K. D. Refinery turned quite a bit of oil loose, and was a continual pollution hazard. He also described the trap which he had required appellant to build to prevent the escape of waste. Other evidence showed there were sixty-six producing wells in the field. There was evidence to the effect that a trifle more than half of them were owned by major companies who prevented the escape of waste oil therefrom.

The evidence shows that salt deposits and oil deposits had occurred on appellee's land. It is a matter of common knowledge that salt deposited on land kills vegetation, and renders land sterile. And there was no evidence that any salt water ever escaped from appellant's plant; indeed, the evidence was that it would not accept any oil where the contents exceeded one per cent salt water, and that this would evaporate in the process of distilling. Appellee must sustain his judgment for damages, if at all, upon the testimony of his witness, to the effect that he had observed the oil in the Branch, and that half or more of it was cast into the Branch by appellant. Appellant objected to such evidence on the ground that such evidence was an opinion, and that the witness did not even profess to be an expert. But without taking up appellant's various assignments of error, we are constrained to hold that the court erred in refusing appellant's request for a peremptorily instructed verdict in its favor.

In the first place, as already noted, appellant's liability is predicated not on acts which would have constituted negligence at common law, but upon violation of Articles 698 and 698a, Vernon's Annotated Penal Code. And we fail to find any testimony to the effect that oil and refinery waste from appellant's plant spread over the waters of the Branch or covered its surface for a distance of 300 feet. But it would not, of itself, fix liability on appellant for the damages suffered by appellee through the pollution of the stream, if it were established that appellant had been guilty of violating the statutes against stream pollution. For the undisputed evidence showed that the sources of the established pollution were various, and appellant could not be held liable for the damages caused by others. Were we to assume that oil alone caused the damages to appellee's land, it is still largely conjectural as to how much of the oil deposited on appellee's land came from appellant's plant. And what was said in De Garza v. Magnolia Petroleum Company, Tex.Civ. App., 107 S.W.2d 1078, 1082, where salt was the agency complained of, is here applicable: "In other words, there were so many ways, and so many sources from which the salt that contaminated appellants' tanks may have come, that we cannot indulge in the presumption that this salt came from the leases of appellee, and certainly we cannot presume that it came in sufficient quantities to do damage."

In Tucker Oil Co. v. Matthews, Tex.Civ. App., 119 S.W.2d 606, 608, the court said: "The first assignment presented here is to the refusal of the court to grant the motion for an instructed verdict, on the ground that the evidence relied on was insufficient to show the right of recovery against the defendant, in that, there was no possible basis in the testimony for a determination of how much of the pollution of the water was caused by the acts or omissions of the defendant, and how much resulted from other causes with which defendant was in no manner connected. And therefore, the judgment rendered against the defendant was necessarily based on mere surmises or suspicion and conjectures, which was no more than a mere scintilla of evidence, which was incompetent to support a recovery. That assignment is sustained, for the reasons urged, which we believe are unanswerable."

But in addition to the uncertainty as to the source of the oil that was deposited upon appellee's land, as between appellant and the various other unquestioned sources of pollution, there must be added the uncertainty as to whether the agency causing the damage to appellee's farm was the deposited oil or the deposited salt. There was no evidence that any salt water escaped from appellant's plant; but to the contrary, there was direct, positive proof that none did. There is no basis in the evidence whatever for charging up the damages resulting from the deposit of salt on appellee's land against appellant. And the situation thus confronting us makes applicable the principle thus stated in Sun Oil Co. v. Robicheaux, Tex.Com.App., 23 S.W.2d 713, 715: "The rule is well established in this state, and supported by almost universal authority, that an action at law for damages for tort cannot be maintained against several defendants jointly, when each acted independently of the others and there was no concert or unity of design between them. In such a case the tort of each defendant is several when committed * * *. Under such circumstances, each tort-feasor is liable only for the part of the injury or damages caused by his own wrong; that is, where a person contributes to an injury along with others, he must respond in damages, but if he acts independently, and not in concert of action with other persons in causing such injury, he is liable only for the damages which directly and proximately result from his own act, and the fact that it may be difficult to define the damages caused by the wrongful act of each person who independently contributed to the final result does not affect the rule." (Citing authorities.) Now, while we know from the jury's answer to special issue No. 6 that they were not assessing against appellant the entire damage which had been sustained by appellee, we cannot know what proportion of such damage they found to have been caused by appellant. But it was impossible to do more, from the evidence before them, than merely guess at the damages for which appellant was legally responsible.

We have carefully examined the authorities cited by appellee and do not consider them in point in the respects relied on by appellee. It is well settled, as appellee points out, that "where the evidence establishes that a plaintiff has suffered sub-

stantial damages, he is not to be denied a recovery merely because others than the defendant contributed to bring about his loss and he is unable to show distinctly the amount of damages contributed by each tort-feasor. All that the law requires is that the best evidence of which a case is susceptible be produced, and if from such evidence the amount of damages caused by the defendant can be inferred or estimated by the jury with reasonable certainty, then the amount of such damage is for the jury." (Citing authorities.) Powell Salt Water Co. v. Bigham, Tex.Civ.App., 69 S. W.2d 788, 790. But, as we have indicated, we are constrained to hold that under the evidence in the record before us the jury is without any guide to determine the extent of injuries caused by appellant. They may infer that appellant caused some of appellee's damages, in so far as such damages resulted from petroleum, but there is no basis, no reasonable certainty, for determining the extent of damage caused by petroleum or that caused by salt. If it be conceded, for the sake of argument, that there is admissible evidence in the record from which the jury might infer that appellant caused half of the injury resulting from deposits of petroleum, there is no evidence to furnish any basis for arriving at the damage caused by salt in comparison to that caused by petroleum, and no way to separate same, and none was attempted.

As the court below should have instructed a verdict for appellant, it is our duty to reverse the judgment and here render it for appellant.

Reversed and rendered.