## HELTON v. LUSE & FOSDICK DRILLING CO.

### No. 2086.

Court of Civil Appeals of Texas. Eastland.

Jan. 24, 1941.

Maxberry & Vance, of Mt. Pleasant, for appellant.

T. R. Florey, Jr., of Mt. Pleasant, for appellee.

GRISSOM, Justice.

R. S. Helton instituted this suit against Luse & Fosdick Drilling Company to recover "permanent damages" to a 163-acre tract of land. Plaintiff lived on said tract and had long been engaged there in farming and stock raising. It was alleged that plaintiff's said farm was traversed by a stream known as Trent Branch; that said stream entered plaintiff's farm on its northwest corner and flowed across said farm in a southeasterly direction; that said stream was a "stream" or "water course" in the sense that said terms are used in Art. 698a of the Vernon's Ann. Penal Code of Texas; that the defendant operated six oil wells located in the townsite of Talco, about 4 miles distant from plaintiff's farm; that defendant released from said wells a flow of water into a trench and that said water found its way into Trent Branch; that there was dissolved in and inter-mixed with said water from said wells, salt, oil and oil well waste; that de-

fendant's act in turning said salt water, oil and oil well waste into said stream had resulted in permanent damages to plaintiff's farm; that said act of the defendant was in violation of Arts. 698 and 698a, P.C., Acts 1931, 42d Leg., 1st C.S., p. 88, ch. 42; that the violation of said statutes constituted negligence per se, and was the proximate cause of the damage to plaintiff's farm.

The defendant answered, among other things, that there were about 175 oil wells and three refineries in the city of Talco which drain into Trent Branch, and excepted to plaintiff's petition because no method was alleged by which the damages caused by the defendant could be ascertained if plaintiff had been damaged. Defendant excepted to the petition because no act of negligence was alleged, and denied that it had violated the Penal laws of Texas. Defendant further alleged that prior thereto plaintiff instituted a similar suit against Tal-Tex Refinery Company, that judgment was rendered in said cause in November, 1938, in which it was adjudicated that no damage had been done to plaintiff's land; that said judgment was a final judgment, and that, therefore, plaintiff could not recover for any damage to his land prior to said date. The defendant further answered by general denial.

The cause was submitted to a jury on special issues which were answered as follows: (1) That during the two-year period ending February 21, 1939, plaintiff's farm did not sustain permanent damages; (2) that defendant did not unlawfully release any oil into Trent Branch; (3) that defendant did not release any salt water into Trent Branch; (4) that the salt water referred to in issue 3 neither produced nor contributed to a salinity in excess of 2,000 parts of salt to 1,000,000 parts of water; (5) that the oil referred to in issue No. 2 did not at any time during said period cover the surface of Trent Branch a distance in excess of 300 feet; (6) that the acts of defendant in releasing oil into Trent Branch, if it did, was not a proximate cause of damages to plaintiff's farm; (7) that the acts of defendant in releasing salt water into Trent Branch, if it did, was not a proximate cause of damages to plaintiff's farm; (8) that Trent Branch has a channel with well-defined bed and banks; (9) that Trent Branch has a current of water; (10) that Trent

Branch has a permanent source of water supply; (11) that the cash market value of plaintiff's farm per acre on February 21, 1937 was $25; (12) that the cash market value of plaintiff's farm per acre on February 21, 1939 was $25; (13) that the per cent of the total damages to plaintiff's farm, if any, that was caused by the acts or omissions of the defendant was "none." Judgment was rendered for defendant and plaintiff has appealed.

The case is presented to this court upon three assignments of error to the action of the court in overruling plaintiff's motion for a new trial, (1) Because the jury's verdict that plaintiff's land had sustained no permanent injuries was contrary to the overwhelming preponderance of the evidence, (2) because the undisputed evidence showed the value of the farm to be $35 or $40 per acre in 1937, and the verdict set the value on that date at only $25 an acre, (3) because the jury was guilty of misconduct because after the jury had retired and "before a verdict was agreed upon, one of the jurors remarked to the jury that 'I think the plaintiff should have sued all the parties involved in the pollution of Trent Branch and not try to put all the burden on the defendant.'"

After a painstaking study of the statement of facts we conclude that the evidence sustains the findings of the jury complained of in the first and second assignments. They are overruled.

With reference to the error complained of in the third assignment, the testimony adduced upon the hearing of a motion for a new trial is uncertain as to just what was said by a juror with reference to his idea as to who should have been sued for the pollution of Trent Branch and leaves in uncertainty the time at which such statement, or a somewhat similar statement, was made. There is evidence sufficient to support a conclusion by the trial court that such a remark by the juror was made after the jury had answered special issue No. 1, to the effect that plaintiff's farm had not sustained permanent damages, as alleged by plaintiff. In other words, the statement was made at a time when the jury had already determined a controlling issue against the plaintiff. It may be well doubted, however, whether or not said statement by an unnamed juror of his opinion as to the justness of plaintiff's suit against the defend-

ant constituted a "communication made to the jury" or constituted the reception of "other testimony" amounting to misconduct of a jury, within the meaning of Art. 2234, R.S.1925, or, if so, that same was material; that is, reasonably calculated to affect the verdict. However, if a juror expressed the opinion that plaintiff should have sued all the parties contributing to the pollution of Trent Branch and should not have attempted to lay all the blame on the defendant, or, if a juror stated, in substance, that he didn't see how they could sue one man for damages when all parties were interested in it, or stated as still another witness' version was "I didn't know you could sue one,—I thought you would have to sue them all", and, if it be assumed, for present purposes, that such a statement by a juror would ordinarily constitute misconduct of a jury, within the meaning of Art. 2234, and reversible error, we think this is not necessarily the result under the circumstances of this case. There was testimony that some such statement was made after the jury had come to the conclusion that "Mr. Helton wasn't entitled to anything" from the defendant, that the question as to whether it might have been different if plaintiff had sued all the parties who contributed to the pollution of Trent Branch was discussed "after we rendered a verdict." The evidence was sufficient to sustain the court's finding that some such statement was made after the jury had determined that there had been no permanent damage to plaintiff's land. Under the circumstances we think the court was authorized to conclude that the statement was made at a time when it was not reasonably calculated to affect the verdict, if otherwise it might have done so. Kaker v. Parrish, Tex.Civ.App., 187 S.W. 517, 521, writ refused; Hansen v. Ponder, Tex.Civ.App., 23 S.W.2d 737, 738, writ refused; Wilson v. Place, Tex.Civ.App., 293 S.W. 322, 324; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, 773; Magee v. Cavins, Tex.Civ.App., 197 S.W. 1015, 1019; Texas Utilities Co. v. Dear, Tex.Civ.App., 64 S.W.2d 807, 816, writ dismissed; McMath v. Staten, Tex.Civ.App., 60 S.W.2d 290, 295; E. L. Martin, Inc., v. Kyser, Tex.Civ.App., 104 S.W.2d 592, 596; Farmers' Nat. Bank v. Harper, Tex.Civ.App., 261 S.W. 160, 162; Traders & Gen. Ins. Co. v. Lincecum 130 Tex. 220, 107 S.W.2d 585, 587; Giles v. Tyson, Tex.Civ.App., 13 S.W.2d 452, 455.

In Paluxy Asphalt Co. v. Helton, Tex. Civ.App., 144 S.W.2d 453, the same plaintiff instituted a similar suit for damages, apparently to the same tract of land, against a different defendant. Recovery there, as here, was not sought on appellant's negligence, except as a violation of Arts. 698 and 698a of the Penal Code constitutes negligence per se. Judgment in that case was for the plaintiff. The Galveston Court of Civil Appeals, in an opinion by Justice Cody, held that in order for plaintiff to show a violation of said statutes in discharging oil or refinery waste into Trent Branch it was required that the testimony show the oil or waste from the defendant's plant spread over the waters of the branch, or covered its surface, for a distance of 300 feet. Art. 698a Vernon's Ann. Penal Code, sec. 1 provides that when a violation of said Act is charged proof must be made that the oil or waste "covered an area of such water in excess of ten thousand (10,000) square feet or was on the surface of a river, stream, bayou or channel of this State for a distance in excess of three hundred (300) feet." Section 2 of said statute provides, in substance, that it shall not be a violation thereof to discharge salt water into a stream unless such act "produces or contributes to a salinity in excess to two thousand parts of salt in one million parts of water * * *."

In the instant case, it is undisputed that at the time of the trial of this case there were 670 oil wells in the Talco field; that 187 of these drained into Trent Branch; that at said time there were two refineries draining into Trent Branch. It was agreed that "the defendant and other operators in the Talco field have contributed to the pollution of Trent Branch." There were neither allegations nor evidence that the defendant discharged oil or oil well waste into Trent Branch and covered the surface thereof in excess of 300 feet, nor is there allegation or evidence that the defendant discharged salt water into Trent Branch that produced or contributed to a salinity in excess of 2000 parts of salt in 1,000,000 parts of water. Plaintiff's suit depended upon allegations and proof of a violation of the named statutes. The defendant was not shown to have violated said statutes in the absence of such evidence. The evidence relative thereto was to the contrary. Under such situation, under the decision in Paluxy Asphalt Co. v. Helton, supra, the judgment

was necessarily for the defendant. Regardless of the questions heretofore discussed, the judgment rendered was the only one that could properly have been rendered in the cause. Handy v. Olney Oil & Refining Co., Tex.Civ.App., 68 S.W. 2d 313, writ refused.

The judgment is affirmed.