Chas. E. Coombes, of Stamford, and Virgil T. Seaberry, of Eastland, for appellant.

Smith & Smith and J. F. Lindsey, all of Anson, for appellee.

## ALGORDE OIL CO. v. HOKANSON.

### No. 2440.

Court of Civil Appeals of Texas. Eastland.

March 3, 1944.

Rehearing Denied April 7, 1944.

LESLIE, Chief Justice.

Plaintiff J. P. Hokanson, instituted this suit against Algorde Oil Company, a corporation, for damages to his land and livestock by virtue of salt water pollution from defendant's lease. Defendant answered by exceptions, general denial and specifically alleged that plaintiff's damages, if any, were caused, in whole or in part, by other and independent owners and operators of various oil and gas wells in the same field and watershed, each acting independently of this defendant and with which it had no connection, directly or indirectly. At least eight of such other operators are specifically named in the answer.

The case was submitted on special issues, and on the verdict returned the court entered a judgment in favor of the plaintiff for the sum of $1,467.

In addition to damage to his land, the plaintiff sought recovery of $200 for the loss of 225 hens that died from drinking the salt water; $200 for damages for destruction of fish in his tank; $150 damage by reason of having to haul stock water, etc.

351

The last three items were either not submitted to the jury or were found against the plaintiff.

Such damages as were awarded appear to have been based on injury to the land which was alleged to have (in its original condition) a market value of $45 per acre and found by the jury to have a market value of $50 per acre. The land was alleged to have a market value "not exceeding" $30 per acre after the injury from salt water, etc., and, on the issue submitted, the jury found it had a value of $35 per acre after the injury was sustained. From the above judgment the defendant appeals.

Passing over any possible defects and deficiency in pleadings when tested by the opinion in Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221, and the many authorities following the same, consideration will now be given to the appellant's first point upon which it relies for reversal and rendition of the judgment. That point is as follows: "The evidence having shown without conflict that plaintiff's damage, if any, resulted from operations by other concerns acting separately and independently, and with no concert or unity in design; plaintiff having failed either to allege or prove any specific act or omission constituting negligence on the part of the defendant; and plaintiff having failed to offer any competent evidence as to the existence or amount of his damages, the trial court erred in overruling and in not sustaining defendant's motion for an instructed verdict."

The controlling facts will be stated in substance.

The defendant owned two leases in the area of Ivy field, one of 60 acres and the other 10 acres. The well on the 10 acres has long since been abandoned and plugged. There are five producing wells on the defendant's 60 acres. Defendant's land or lease is approximately a mile and a half from plaintiff's east boundary. Across the Ivy field there is a draw with a north and south prong. These prongs or forks join just west of defendant's lease and the larger draw formed by their union goes across the Swenson lands, the Soderberg tract and on to plaintiff's land, where his water tank is situated.

From 40 to 60 wells have been drilled and are now being operated upon this watershed. Practically all of them produce salt water. Several salt water pits, etc., are on the various tracts or leases. When heavy rains fall the draw becomes very wide and deep enough to swim a horse. The entire drainage goes upon and across parts of plaintiff's land, especially that in and near the draw. Accompanying the statement of facts is a map reflecting the large number of wells operated in the area. As interpreted by the testimony, the map shows these wells produce salt water, and that many of them had convenient pits for impounding such water, oil, etc.

The testimony conclusively shows that the salt water and oil which passes down the draw on to plaintiff's land does not originate exclusively on defendant's lease, but in part, if not in the main, from the large number of wells operated by others at the same time in the watershed. It is also undisputed, and no contention is made to the contrary, that there was no agreement, unity or concert of action between the defendant and the various other oil operators in said field or watershed whereby salt water, etc., was permitted to escape. Under such state of facts, if none other existed, the applicable rule of law is stated by our Supreme Court in Sun Oil Co. v. Robicheaux, 23 S.W.2d 713, 715, as follows: "The rule is well established in this state, and supported by almost universal authority, that an action at law for damages for tort cannot be maintained against several defendants jointly, when each acted independently of the others and there was no concert or unity of design between them. In such a case the tort of each defendant is several when committed, and it does not become joint because afterwards its consequences, united with the consequences of several other torts committed by other persons in producing damages. Under such circumstances, each tort-feasor is liable only for the part of the injury or damages caused by his own wrong * * *."

Without dispute, and as also found by the jury, the salt water which came from various leases and wells other than those operated by defendant caused in some measure the damage to plaintiff's land. The burden of proof was upon the plaintiff to show by the best evidence of which the case is susceptible that defendant's negligence was the cause of his entire damage, or to show with reasonable certainty the proportion thereof proximately caused by

defendant's negligence. In both respects plaintiff failed in his testimony, and the proposition to that effect (point 1) was closely contested and frequently urged throughout the trial.

There is no competent evidence in the record showing the amount of injury proximately caused by salt water, etc., from defendant's wells or pits. In other words, there is not a scintilla of evidence showing the amount of injury or damage proximately so caused.

In answer to issue 5 the jury found that 40 per cent of the damages was chargeable to salt water seepage from the defendant's wells, but there is no testimony upon which the jury could base such an estimate, and the jury's answer to that issue was wholly based on conjecture and speculation. An answer so given cannot be sustained.

As said in Tucker Oil Co. v. Matthews, Tex.Civ.App., 119 S.W.2d 606, 608: "The first assignment presented here is to the refusal of the court to grant the motion for an instructed verdict, on the ground that the evidence relied on was insufficient to show the right of recovery against the defendant, in that, there was no possible basis in the testimony for a determination of how much of the pollution of the water was caused by the acts or omissions of the defendant, and how much resulted from other causes with which defendant was in no manner connected. And therefore, the judgment rendered against the defendant was necessarily based on mere surmises or suspicion and conjectures, which was no more than a mere scintilla of evidence, which was incompetent to support a recovery. That assignment is sustained, for the reasons urged, which we believe are unanswerable."

In the Tucker case there was a finding without any evidence to support it "that 75 per cent of such losses was a proximate result of the failure of the defendant to use ordinary care to take care of the waste, oil, basic sediment and salt water produced by it in its operations on the lease." That implied a finding that 25 per cent of the loss was attributable to other operators, but there was no evidence fixing any percentage of the loss chargeable to the defendant. That is the situation in the instant case.

For the foregoing reasons we are of the opinion that the judgment of the trial court should be reversed and the judgment here rendered in favor of the defendant. The following authorities, in our opinion, require such disposition of the appeal: Tucker case, supra; Sun Oil Co. et al. v. Robicheaux et al., Tex.Com.App., 23 S.W.2d 713; Mauk v. Texas Pipe Line Co., Tex.Civ.App., 93 S.W.2d 820; Paluxy Asphalt Co. v. Helton, Tex.Civ. App., 144 S.W.2d 453; Gulf, C. & S. F. Ry. Co. v. Seydler, Tex.Civ.App., 132 S.W. 2d 453; De Garza v. Magnolia Petroleum Co., Tex.Civ.App., 107 S.W.2d 1078; Galveston, H. & S. A. Ry. Co. v. Vogt, Tex.Civ.App., 181 S.W. 841; and authorities cited in each.

It is so ordered.