## PITZER & WEST v. THIGPEN.
### No. 12899.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 20, 1934.

Rehearing Denied Feb. 17, 1934.

Fred T. Arnold, of Graham, for appellants.

Marshall & King, of Graham, for appellee.

POWER, Justice.

Appellee, Charlie Thigpen, instituted this suit in the county court of Young county, Tex., alleging, in substance, that he owned and operated a small dairy in Young county, Tex., and had a small pasture leased immediately adjoining the oil and gas lease of appellants, Pitzer & West; that appellee's lease was to the south of appellants' oil and gas lease; that he owned and kept some fine Jersey dairy cows; that on appellants' oil and gas lease were some producing wells; that the natural drainage from appellants' lease was toward and through appellee's pasture; that from the Pitzer & West oil wells was produced oil, salt water, and basic sediments; that such salt water, with some oil and basic sediments, was drained first into some pits that the appellants had, which pits were sometimes broken and overflowed, and that there was some seepage through the levees from these pits and the water would drain and percolate down to and through a branch on appellee's lease and there stand several inches deep for some two or three weeks in holes of water, and that appellee's cattle had access to said holes of water and drank said slush containing salt water, oil, and basic sediments, and that the drinking of such solutions by appellee's cattle resulted in the death of four cows, the loss of three calves prematurely born, and the drying up of the milk of three cows and subsequent damages.

Judgment was rendered for appellee, Thigpen, and Pitzer & West have appealed.

The burden of proof was on appellee, Thigpen, to show by that degree of evidence that satisfied the unprejudiced mind to that degree of certainty required in this or similar cases that his cattle did drink such solution and that the drinking of said solution was the proximate cause of the death and injury to the cattle in question. On this question the appellee testified that he knew the location of the oil and gas lease of appellants, Pitzer & West, and described the location of the wells and pits with reference to his lease, and that the drainage was from said pits through his lease, forming the holes of water as pleaded; that the cows died, as pleaded, and that the calves were prematurely born and died, as pleaded, and that the milch cows did not give milk, as pleaded; that along about the time the cattle began to die he saw tracks along the pools in this branch; some of these tracks were fresh and some of them were old; that the fresh tracks led to the water and turned and walked out; that the ponds of water were salty; that his cows were sick from three to five days and bloated; that before they got sick they had at all times been healthy; that they would go about stupidlike, swelled up, some of them, and some of them not quite so bad; that he never did see any of these cows drink salt water from this branch.

Paul Atwell testified that he had charge of said cattle; that his duties with reference to said cattle were getting them up for milk; that at one time he started driving the cows to the house, and that while driving them one drank out of the branch, and before he got to the house she was sick; that he drank out of the branch, and that the water tasted pretty salty and that it burned his tongue; that the cow would not eat and could not get about, just dragged along; that she did not die; that she did not drink very much, about four or five swallows of the salt water; that she was sick in about thirty minutes after she drank the salt water; that she was all right before drinking it; that he was working for appellee, Thigpen, when some of the cows died; that they had the same symptoms.

George Mahaney testified that he lived in Young county, in what is known as the Bunger oil fields; that wells were drilled in that vicinity from 1,600 to 4,100 feet; that the wells generally produced gravity oil of from 35 to 42; that every oil well produced salt water; that he has observed the general method of treatment of oil with respect to bleeding the tanks used there and in other parts of Young county; that these methods seem to be uniform where salt water is produced; that he has raised and handled stock all of his life; that he has had experience with stock in the Bunger oil fields in the vicinity of these bleeding pits and slush pits; that he has observed cows and live stock drinking salt water or this basic sediment that comes from oil wells, and based on that experience he stated that, if a cow drinks that internally, it will produce death; that from his experience and observation a cow will drink that character of water contain-

ing salt water, basic sediments, and oil; that he has known of two cows killed by drinking salt water; that he did not think there was anything else the matter with said cows; that it was hardly probable that anything else killed them; that it might be possible, but a man would have an awful job making him think so; that the thing in salt water that would kill a cow is coal oil; that there is always more or less of that coal oil in salt water that has been brought off live oil; that it would be the coal oil content in the salt water that would kill the cows; if there is any coal oil, it would come to the top, and the cows would drink from the top; that he thought it would be both the salt water and the coal oil that would kill the cows; that, if they drank salt water by itself, it would kill them, or, if they would drink oil, it would kill them; that he had two to die that drank oil; that he would say that the drinking of pure salt water would kill a cow; that he had never seen Pitzer & West wells; that he would not tell the jury that the water from the Pitzer & West wells would kill a cow.

J. W. Sodbury testified that he had worked in the dairy business for the past fifteen years; that he worked for Thurman three years; herded his cows on a free range at Breckenridge where there were some 20 or 25 wells; that these wells made a right smart salt water that run into a kind of slush pit where it was first pumped into a tank and then bled out; that these slush pits contained salt water and a little oil; that was in the years 1926 and 1927; that he saw these cows drink that salt water from these pits; that, from his experience from seeing cows drink salt water, it would kill them; that this was based on his actual experience, seeing them drink it and seeing their actions afterwards; it kind of forms a bloat and swells them a good deal before they die; that they live from 10 to 24 hours before they die; that they prematurely lose their calves and their milk will dry up; that he did not know if anything else was wrong with these cows except drinking that water.

■ This was the total evidence, in substance and effect, favorable to plaintiff in this cause of action to show that the proximate cause of the death and injury to the cattle was the drinking of this salt water,

oil, and basic sediment. It is the opinion of this court that the evidence is insufficient to show proximate cause. There must be more than a scintilla of evidence. As said in Houston, E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 146 S. W. 533, 537: "Adjudicated cases on questions of evidence are valuable as precedents only when based on the same or not dissimilar facts, and such cases are rarely found."

■ There was no proof that the salt water, oil, and other basic sediments draining from appellants' pits was poisonous, and it cannot be said that it is a matter of common knowledge that the character of salt water, oil, and substances emitting from appellants' pits was poisonous to cattle; the evidence of one witness that he saw one cow drink from this solution and that she was afterwards sick does no more than prove succeeding events. The proof that there were tracks of cattle about the pools of water, it seems to the court, does not have probative force, to the effect that the water was poisonous, that the cattle drank therefrom, and that the proximate cause of the death of the cattle was drinking of said poisonous solution. The testimony of George Mahaney and J. W. Sodbury was to the effect that they knew of certain other oil fields and wells distant from the wells and pits on appellants' lease and that the cattle drank from said solutions from said other distant wells and died therefrom, and, based upon that knowledge, it was their opinion that the cattle would die from drinking salt water, oil, and basic sediments. This could hardly be proof that would satisfy the unprejudiced mind to that degree of certainty required in this or similar cases that the cattle drank the solution from the Pitzer & West wells, were poisoned and died, and that others were injured therefrom. It is a matter of common knowledge that the character of the solutions from wells in various fields may be different in composition, and it is not shown that the oil and basic sediments and solutions referred to by the witnesses Mahaney and Sodbury were the same or similar to the salt water, oil, and basic sediments coming from appellants' pits.

Proximate cause not having been shown, it is unnecessary for this court to pass on other assignments of error. It is ordered that this cause be reversed and remanded.