## GLOBE AIRCRAFT CORPORATION v. THOMPSON.

No. 14836.

Court of Civil Appeals of Texas.
Fort Worth.
June 6, 1947.

866

Fred Korth and Rhodes, Kelly & Morris, all of Fort Worth, for appellant.

Lloyd H. Burns and W. H. Tolbert, both of Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellee B. G. Thompson was plaintiff in the court below, and appellant Globe Aircraft Corporation was defendant.

The case made by plaintiff's pleadings, as narrowed by the issues submitted to the jury, is somewhat as follows: From the month of April, 1944, until the latter part of 1945, plaintiff occupied under lease a tract of land north of Fort Worth, on which he operated a dairy. From April of 1944 until June of 1945 some of plaintiff's cows died, and others depreciated in value, and plaintiff suffered a net loss in revenue derived from sale of milk, all as a result of the negligence of defendant in permitting chromic acid to escape from its manufacturing plant located near plaintiff's dairy. The case alleged is that the acid flowed into a creek on the land leased by plaintiff, and that his cows were poisoned by the polluted water in the creek.

Some of the jury findings will be noticed more in detail later in the opinion, but it may be said here that the findings were in part favorable to plaintiff, and that judgment was rendered on the verdict that plaintiff recover damages in the sum of $4,425. Defendant has appealed, relying on nine points of error.

The first five points of error are briefed together. We shall, however, discuss separately the contentions raised under these points.

First, it is argued that the court should have instructed a verdict for defendant because there was no testimony showing that there was sufficient chromic acid in the waters of the creek to cause injury to plain-tiff's cattle. Plaintiff undoubtedly tried the case in the court below, and still contends here, that his cattle began to suffer injury from the pollution of the creek within a short time after he moved onto the leased land in April of 1944. A sample of water was taken from the creek in April of 1945, and other samples were taken in June and later in the summer of that year. Those samples were analyzed by chemists, and found to contain chromic acid. The least chromic acid content shown by the analyses was 7.8 parts of acid to one million parts of water, the greatest content was 31 parts of acid to one million parts of water. Some of the expert witnesses testified that chromic acid was poisonous, but none of them testified as to the amount of acid which would be required to render the water injurious to the cattle. In other words, there is no expert testimony that water with chromic acid content of the amount shown by the chemical analyses would be injurious to cattle. Opposed to defendant's argument is the theory advanced by plaintiff to the effect that the poisonous nature of the polluted water may reasonably be inferred from the known fact that chromic acid was in the water, from the fact that the cattle suffered injury, and from the fact that the evidence excludes the likelihood of injury from any other cause. Since we have concluded that the judgment of the trial court must be reversed for other reasons, and since the proof may not be the same on another trial, we shall forego further discussion of this question except to say that we are unwilling, in view of the entire record, to render judgment for defendant on this ground.

 Defendant also contends that there is no evidence showing that defendant was negligent in permitting chromic acid to escape from its plant onto plaintiff's premises. We overrule this contention. The proof is sufficient to show that defendant used chromic acid in a solution into which various metal parts were dipped in a cleaning process; that the metal parts were then dipped into a vat of rinsing water; that about once a day the water from the rinsing vat was emptied, and that this water would accumulate chromic acid; that the water from the

rinsing vat was emptied into a roadside ditch, and then flowed a comparatively short distance into the creek in question. The evidence is sufficient to show that defendant knew of the polluted nature of the contents of the rinsing vat, and knew that it flowed into the creek and onto plaintiff's premises. The evidence was sufficient to raise a jury issue as to negligence vel non.

■ The fourth and fifth points of error will be considered together. Under the fourth it is contended that an instructed verdict should have been ordered, and under the fifth it is contended that judgment should have been rendered non obstante veredicto, for the reasons which will appear from our discussion of the points. As has been said, plaintiff moved onto the premises in question in April of 1944. He operated his establishment as a dairy until the month of January, 1945, when he ceased to sell milk. He continued to keep some cattle on the premises for several more months, finally selling the cattle he had left in or about the month of August. From the witness stand plaintiff declared that he did not seek recovery from defendant of any damages occurring after June 22, 1945, because the stream had then become polluted by oil escaping from the premises of another nearby industrial plant. Although plaintiff argues to the contrary in his brief, it is our opinion after a painstaking review of the record that the evidence shows without dispute that defendant did not begin the use of chromic acid in its plant, and did not permit the escape of such acid from its plant, prior to the month of November, of 1944, or at the earliest, prior to the latter part of October, 1944. As we have said, plaintiff pleaded and tried his case on the theory that his cattle began to suffer damage from chromic acid poisoning within a short time after he moved onto the premises in April of 1944, and the evidence of damage offered by plaintiff related to the loss of and depreciation in value of cows, and the loss of milk production, before as well as after October of 1944. Defendant's theory is that, in view of the undisputed evidence as to the date when defendant first began the use of chromic acid, and in view

of the fact that the evidence provides no basis for segregating the damages suffered before such date from the damages suffered afterwards, there is no basis for a finding by the jury nor for an award of partial damages for the injuries suffered after defendant began the use of the chromic acid and commenced the dumping of it in the roadside ditch which led to the creek. Defendant cites cases like Pitzer & West v. Thigpen, Tex.Civ.App., 68 S.W.2d 324, writ dismissed; and Tucker Oil Co. v. Matthews, Tex.Civ.App., 119 S.W.2d 606. In such cases it is held that where there is no basis for determining how much of the damages suffered resulted from the wrongful acts of the defendant, and how much resulted from other causes, a judgment would be based on mere conjecture, and could not be upheld. The rule is applicable in the present case. However, we cannot say that it appears from the record that plaintiff might not on another trial be able to segregate his damages by proper proof, and thus be entitled to recover such of his damages as occurred after defendant began to pollute the stream, provided, of course, it also be shown that such damages resulted from wrongful acts of the defendant. To quote from the language of the Supreme Court, in Hall v. Rawls, 141 Tex. 235, 171 S.W.2d 324, 327: "The cause will be remanded rather than rendered, because it appears that the justice of the case demands another trial." See also, Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178; and Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031.

The ninth point of error raises a question related to that just discussed. In the first issue appearing in the charge to the jury, bearing the number 1–A, the jury were asked if plaintiff was in possession and had control of the premises in question from April 13, 1944, until June 22, 1945. The next issue, being Special Issue No. 1, read as follows: "During any of the time that the plaintiff in this case had the land in controversy in this case under lease or in his possession, do you find from a preponderance of the evidence that the defendant Globe Aircraft Corporation per-

mitted chromic acid to escape from its plant?"

Issue No. 2 inquired as to defendant's negligence. Issues 3, 4 and 4–A are not material to any question raised on appeal. Issue No. 5 read as follows:

■ "Do you find from a preponderance of the evidence that as a direct result of chromic acid coming onto the lands in question, that the plaintiff's net revenue, if any, from the sale of milk from his cows was decreased?" Issue No. 6 inquired as to the amount of such loss. Other issues inquired as to the depreciation in value of certain cattle. It is seen that the court submitted the case to the jury on the theory that there was evidence to support a finding that chromic acid was escaping during the entire time plaintiff occupied the premises. We have held that the evidence shows without dispute that no acid escaped before October or November of 1944 (there may be some slight evidence that the escape of acid began in October). The verdict therefore, may include damages for injuries suffered before the date when defendant began the use of chromic acid. For reasons similar to those given in our discussion of the fourth and fifth points of error, we hold that the evidence was not sufficient to support the verdict. Defendant objected to the issues submitted on the ground that they did not limit the inquiries to the time between October, or November, of 1944, and June 22, 1945.

■ Plaintiff argues that defendant is in no position to raise on appeal the questions just discussed because it did not present proper issues to the court and request their submission. In other words, plaintiff asserts that the claim of defendant that no acid escaped before October or November of 1944 was a defensive one, and that the burden of submitting such an affirmative defense rested on defendant. We do not agree with this contention. The burden rested on plaintiff to prove his case. If he sought damages from and after April of 1944, the burden was on him to prove that the wrongful acts of defendant began in or prior to April, and the burden was not on defendant to plead, prove, or obtain jury findings that the escape of acid began at a later date. Its general denial put in issue the allegations of plaintiff that the escape of acid continued during the entire time that plaintiff occupied the premises in question.

■ Under the sixth and seventh points defendant argues that plaintiff was not entitled to judgment because plaintiff testified, without dispute, that he had assigned his claim for damages to the Union Bank & Trust Company, of Fort Worth, to whom he was indebted in a sum greater than the amount of the judgment. We overrule the contention. Plaintiff's testimony was, in effect, not that he had parted with all interest in the claim, but that he had assigned it as collateral security for his indebtedness. "The mere fact that an assignor has transferred a chose does not prevent him from suing in his own name, if he has retained the legal title; in such a case the assignee is a proper but not a necessary party unless the debtor has some legal defense against him alone." 5 Tex. Jur., p. 46.

■ The eighth point complains of the failure to submit two issues pertaining to alleged contributory negligence of the plaintiff. We overrule the point. The defense in question was substantially submitted in another issue.

The judgment of the trial court is reversed and the cause is remanded for another trial.